**TIVOLI CORPORATION and Walter Franklin Goldman, Appellants,**

v.

**JEWELERS MUTUAL INSURANCE COMPANY and Wiggins & Company, Appellees.**

**No. 04–95–00135–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 14, 1996.

Rehearing Overruled Oct. 10, 1996.

Joseph M. Nixon, Buck, Keenan & Owens, L.L.P., Houston, for appellants.

Michael W. Johnston, Leslie Echols Pitts, Broude, Nelson & Harrington, P.C., Fort Worth, Innes Mackillop, Walter J. Gallant, Brown, Sims, Wise & White, Houston, for appellees.

Before LÓPEZ, GREEN and BUTTS, JJ.

## OPINION

BUTTS, Justice.

Plaintiffs, Tivoli Corporation (Tivoli) and Walter Franklin Goldman (Goldman) appeal from the summary judgments granted in favor of defendants, Jewelers Mutual Insurance Company (Jewelers) and Wiggins & Company (Wiggins). We affirm.

This suit arose from the insurance company's denial of coverage of loss of jewelry. Tivoli purchased an insurance policy from Jewelers to cover jewelry and precious stones, with Goldman, the sole owner and president, signing the contract. It is undisputed that the policy was in effect at the time of the claimed loss of jewelry and that the

loss occurred while the jewelry was "in transit."

### The Insurance Policy—Coverage

The insurance policy provides, in pertinent part:

Property in transit is covered only if it is:

1. Shipped by first class registered mail.

2. Shipped by armored car messenger service.

3. Shipped by a private paid delivery service.

4. Shipped by other common or contract carrier.

\* \* \* \* \* \*

5. *In the custody of you, your employee, a commissioned salesman, selling agent or a person that you hire for a short time. The property at all times must be in the possession of the person who is transporting it.* (Emphasis added).

### Property Excluded

We do not cover property:

\* \* \* \* \* \*

10. *In or on a vehicle that is not attended. An attended vehicle has a person actually in or on the vehicle. This person must be you, your employee, or person whose sole duty it is to attend it.* (Emphasis added).

On December 9, 1991, George Kessler, Tivoli's wholesale jewelry salesman, who was traveling between sales locations, placed jewelry valued at $78,000 in the trunk of his car. Kessler stopped at a check cashing business owned by his friend in Houston. Parking in the parking lot and locking the car, Kessler left the jewelry in the trunk. Inside the building, he used the restroom located in a locked security area behind the lobby. Exiting the restroom, Kessler stood by a window with his friend in the secured area overlooking the check cashing business's lobby. Kessler saw thieves taking the jewelry from his car's trunk. He ran from the secured area through the lobby and attempted unsuccessfully to stop the thieves as they drove away.

Goldman notified the insurance agent, Wiggins, of the theft and later filed his proof of loss of the jewelry. Jewelers denied the claim as not covered at the time of loss, determining the jewelry was not in Kessler's possession at all times and also that the exclusion provision applied because the vehicle was unattended.

Tivoli and Goldman sued the defendants, claiming breach of contract, negligence, deceptive trade practices violations, insurance code violations, and breach of good faith. Tivoli and Goldman subsequently moved for summary judgment based on the "unattended vehicle" exclusion and that the jewelry was not in the possession of Kessler at all times as required under coverage condition number 5. In addition, Jewelers alleged that only Tivoli, and not Goldman, was the insured, and only Goldman personally owned the jewelry.[1]

Wiggins filed its motion for summary judgment, alleging that Jewelers filed its motion for summary judgment "with competent summary judgment evidence attached," and that it "joins in [Jewelers'] motion for summary judgment and incorporates same in its motion." No exceptions were leveled at Wiggins's motion.

In the response to the motions for summary judgment, Tivoli and Goldman argued the motions should be denied because: notice requirements of TEX.R.CIV.P. 166a were not met; the evidence is procedurally defective; and material fact issues exist: whether the inventory was "attended" at the time of loss; whether it was in Kessler's possession at that time; what is meant by "attended vehicle" and "possession" as used in the policy—if Wiggins altered those meanings and if both defendants made misstatements or confusing statements as to the meanings; and whether Tivoli or Goldman owned the inventory.

### Standard of Review

The party moving for summary judgment has the burden of showing that no genuine

---

**1.** Since Goldman signed the insurance contract as president and owner, and there is no dispute that he is the 100% owner of Tivoli, we do not agree that Goldman could not claim the loss.

issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue exists, thereby precluding summary judgment, the reviewing court will take as true all evidence favoring the nonmovant, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in the non-movant's favor. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984).

To succeed in showing no material fact issues exist as a matter of law, a defendant may present summary judgment evidence showing that at least one element of the plaintiff's cause of action has been established conclusively against the plaintiff. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983); *see Gray v. Bertrand,* 723 S.W.2d 957, 958 (Tex.1987).

Plaintiffs assert four points of error, contending that the court erred in granting the summary judgment on all of their claims; that the assigned "visiting judge" had no authority to hear the case; that the court should have granted their motion for rehearing; and that section 74.054 of the Texas Government Code is unconstitutional. We address the fourth point of error first.

### Section 74.054

■ Section 74.054 governs the assignment of judges and represents only a portion of the Court Administration Act. TEX.GOV'T CODE ANN. § 74.054 (Vernon 1988). Article V, section 7 of the Texas Constitution prescribes eligibility qualifications for election to a district court bench. Appellant contends that section 74.054, providing for assignment of a judge who is not the elected presiding judge of the court, violates TEX. CONST. art. V, § 7. Appellant contends because an assigned judge is not the elected judge, a constitutional violation results. We do not agree.

The Texas Constitution recognizes that the Legislature has broad powers to assure that the court system functions smoothly. One such recognition of power is found in TEX. CONST. art. V, § 5: "The Legislature shall also provide for the holding of District Court when the Judge thereof is absent, or is from any cause disabled or disqualified from presiding." It is well established that the Texas Constitution does not limit the power of the Legislature to enact laws for the orderly administration of the court system.

The Legislature amended the Court Administration Act in the government code by Acts 1987, 70th Leg., ch. 148, § 2.93, eff. Sept. 1, 1987. The portion of the statute dealing with assignment exactly conforms to the former Court Administration Act, art. 200a of Vernon's Revised Civil Statutes. *See* TEX.REV.CIV.STAT.ANN. art. 200a § 5a (Vernon 1969). The Act further provides that the validity of article 200a of the former Court Administration Act is not affected. *See* TEX. GOV'T CODE ANN. § 74.054 (Vernon 1988).

The Court Administration Act has been held to be constitutional. *See Eucaline Medicine Co. v. Standard Inv. Co.,* 25 S.W.2d 259 (Tex.Civ.App.1930, writ ref'd); *Currie v. Dobbs,* 10 S.W.2d 438, 439 (Tex.Civ.App.—El Paso 1928, no writ). The Legislature's authority met the constitutional challenge to the Court Administration Act and was rejected many years ago. We reject the challenge in the present case.

■ It is noted that the constitutionality of a statute is an affirmative defense that must be timely pled; otherwise it is waived. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 856 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); *see Lynch v. Port of Houston Auth.,* 671 S.W.2d 954, 957 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

In this summary judgment proceeding, it would have been difficult to timely present the complaint. However, even if it had been preserved, our holding would still repudiate the challenge. The fourth point of error is overruled.

■ The second point of error complains specifically that no notice of assign-

ment of the visiting judge was provided the parties. Section 74.053 provides in part:

(a) When a judge is assigned under this chapter the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or in part by the assigned judge.

(b) If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. Each party to the case is only entitled to one objection under this subsection for that case.

(c) An objection under this section must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside.

\* \* \* \* \* \*

TEX.GOV'T CODE ANN. § 74.053 (Vernon Supp. 1996). The parties in this case confirm that they received no notice of an assigned judge. However, notice of assignment is clearly optional and not mandatory. *Turk v. First Nat'l Bank of W. Univ. Place,* 802 S.W.2d 264, 265 (Tex.App.—Houston [1st Dist.] 1990, writ denied). If time or circumstances make it impractical for a presiding judge to give notice of assignment, he need not do so. *Id.* The *Turk* court stated the complaining party failed to show that it would have been reasonable and practical for the presiding judge to send earlier notice. *Id.* In this case, Tivoli and Goldman also fail to make such a showing. *See Morris v. State,* 913 S.W.2d 694, 695 (Tex.App.—Eastland 1995, writ dism'd w.o.j.).

■■■ A party's timely objection to an assignment is mandatory under section 74.053. *Turk,* 802 S.W.2d at 265. Tivoli and Goldman did not make an objection until after the judgment had been signed. Regardless of the reason for the delayed objection, we cannot make an exception to a mandatory rule. *See id.* Because there was no timely objection, the visiting judge was not subject to disqualification.[2] The second point of error is overruled.

In the third point of error, the plaintiffs contend the court erred in not granting a rehearing (new trial) on the summary judgments.

Jewelers filed its motion for summary judgment, setting out its grounds and attaching affidavits and exhibits. Thereafter, Wiggins filed its motion for summary judgment, adopting and incorporating all of Jewelers' grounds. The plaintiffs protested the signing of the summary judgments in a motion for rehearing (new trial), alleging that Wiggins's summary judgment had been signed four days before expiration of 21 days after notice of setting, and that Jewelers' motion was incorrectly set for consideration on the 19th day. It was also alleged and supported by the affidavit of the clerk of the court that the plaintiffs' response was inadvertently omitted from the court papers considered by the visiting judge. Therefore, argue Tivoli and Goldman, that judge failed to consider their evidence as required under rule 166a.

The visiting judge signed Wiggins's summary judgment on November 10, 1994, and signed Jewelers's summary judgment on that same date. The record shows that after the procedural mix-up, Jewelers served a second notice for submission of its motion for summary judgment and set the hearing for December 5, 1994. The last day for the plaintiffs to supplement their response was November 28, 1994, which was not done. The "regular" presiding judge, after considering the evidence, including the plaintiffs' response, signed Jewelers summary judgment on December 13, 1994.

The plaintiffs filed their motion for rehearing (new trial) in late November. There is no order on the motion in the appellate file, however, plaintiffs acknowledge the motion was not granted. They filed notice of appeal on December 9, 1994.

In their motion for new trial, the plaintiffs articulated the procedural matters previously set out. Plaintiffs further argued that the visiting judge did not have the plaintiffs' response to consider. The motion for new

---

**2.** The record in this case is void of any order of assignment of a judge from another area or a transfer order within the Houston district court system. The plaintiffs have not brought a record forward to reflect an assignment under section 74.053. *See* TEX.R.APP.P. 50.

trial also included the response to the motions for summary judgment which alleged the extra-contractual claims had not been addressed in the motions for summary judgment.

■■■■ Regarding the procedural mix-up on dates under the summary judgment procedures, the failure to provide the nonmovant with notice of the summary judgment hearing is not jurisdictional. *French v. Brown,* 424 S.W.2d 893, 894–95 (Tex.1967). This is correctable at a motion for new trial hearing, or upon its overruling, by the appellate court on appeal. *See Rozsa v. Jenkinson,* 754 S.W.2d 507, 509 (Tex.App.—San Antonio 1988, no writ) (judgment reversed where notice to nonmovant sent to wrong address). On a lesser level, the failure to provide the 21–day notice of setting must be raised at a motion for new trial, and, in addition, it requires a showing of harm. *Davis v. Davis,* 734 S.W.2d 707, 712 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). *Williams v. City of Angleton,* 724 S.W.2d 414, 417 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *rev'd on other grounds, Lewis v. Blake,* 876 S.W.2d 314 (Tex.1994), illustrates a showing of harm. Tivoli and Goldman have failed to show that they were harmed.

■■■■ However, we note that Wiggins did give the prescribed 21 days notice, but the judgment was signed four days early. This matter was a procedural defect to be considered in the motion for new trial, which was overruled. Jewelers admitted it did not initially give the prescribed 21 days notice but corrected this by rescheduling the hearing and giving 25 days notice. We overrule that portion of point of error three pertaining to the procedural defects.

Tivoli and Goldman maintain, in the first point of error, that the trial court erred in granting the summary judgments. They separate the argument into four segments. The first declares that the procedural prerequisites of Tex.R.Civ.P. 166a were not followed. We have previously discussed these procedural defects and overruled the contentions.

■■■■ The second argument states that the trial court failed to consider the plaintiffs'

response to the defendants' motions for summary judgment. We have previously discussed this matter, which the clerk freely admits was due to clerical inadvertence. The response was set out and considered in the motion for new trial, which was not granted. Jewelers served plaintiffs with a 25 day notice of a new hearing on its motion for summary judgment, and the order clearly states that the trial court considered the plaintiffs' response. This contention is overruled.

■■■■ The plaintiffs contend that deposition excerpts attached as summary judgment evidence were not properly authenticated. They argue that two deposition excerpts have incorrect verifications, and these minor mistakes destroy the evidentiary validity of the proof. The supreme court has held that deposition excerpts submitted as summary judgment evidence need not be authenticated. *McConathy v. McConathy,* 869 S.W.2d 341, 341–42 (Tex.1994). (Rule 166a(d) supersedes any authentication requirement previously articulated by a court). Therefore, no error is shown.

The third portion of the first point of error states that there existed a material issue of fact on each element of plaintiffs' causes of action. In connection with this, the fourth argument states that the motions for summary judgment referred only to plaintiffs' contractual claims and did not address the DTPA, insurance code, negligence, fraud, and good faith claims.

We must determine whether the insurance claim was properly denied. One issue is whether the "unattended vehicle" exclusion contained in the insurance policy is ambiguous, as maintained by Tivoli and Goldman, so as to preclude summary judgment. The second issue is whether the property was at all times in the possession of Gessler, the salesman while it was in transit.

The policy obtained from Jewelers Mutual Insurance Company is a standard jeweler's block insurance policy. In addition to providing on-premises coverage, the policy provided coverage for the jewelry in the custody of salespeople away from the premises. Gessler was a Tivoli salesman covered by the policy. Gessler made a stop at his friend's

check cashing business in Houston to use the restroom. He left the jewelry in the trunk of his car in the parking lot. When he came out of the restroom, he stood in front of a window looking out at his car. He was inside in a secured area when he saw the theft occurring.

Although the insurance policy issued in this case is a standard policy covering jewelry, there is a lack of Texas cases on the subject. However, the Illinois appellate court ruled on a similar "unattended vehicle" case. In *Zurich Midwest, Inc. v. St. Paul Fire & Marine Ins. Co.*, 159 Ill.App.3d 961, 111 Ill.Dec. 813, 513 N.E.2d 59 (1987), two suitcases of jewelry in transit with a salesman were locked in the trunk of his car. He stopped at a doughnut shop and used the restroom. The restaurant had open windows with an unobstructed view. The salesman stayed within 40 feet of his locked car, and the car was out of his sight for less than one minute. When he walked out of the place, he checked the trunk of his car and discovered that his trunk lock had a hole in it, and that the suitcases of jewelry had been stolen. The policy to insure jewelry issued by St. Paul Fire and Marine Insurance Company contained this exclusion:

> "*Unattended Vehicle.* We won't cover loss to property while such is left in or on a vehicle unless you, your employee or sales personnel are attending the vehicle at the time of the loss."

The question before the Illinois court was whether the term "Unattended Vehicle" is ambiguous. The court held it was not. *Id.* at 963, 111 Ill.Dec. at 814, 513 N.E.2d at 60. Noting that the mere fact that the parties take divergent views of the meaning of the contract language does not render the agreement ambiguous. *Id.* The court further stated that the unattended vehicle clause is not subject to double or multiple meanings. *Id.* It cited Webster's New International Dictionary (3rd ed. 1966), which defined unattended as "lacking a guard, escort, caretaker, or other watcher." *Id.*

The court held that when the salesman went into the restaurant, even with the car securely locked, and lost sight of it when he went into the restroom, he was no longer attending it. The car was "unattended." *Id.*

The court quoted from *Commercial Coin Co. v. The North River Ins. Co.*, 43 Pa.D. & C.2d 268 (1967): "... the use of more restrictive words such as 'actually in or upon' cannot be regarded as providing a reason to interpret 'unattended' as having an unexacting connotation." *Zurich*, 159 Ill.App.3d at 963, 111 Ill.Dec. at 814, 513 N.E.2d at 60. The *Zurich* court held in the summary judgment case that, as a matter of law, the absence of the salesman left the car unattended. *Id.*

The same result was reached in *Soufeh v. Reliance Ins. Co. of New York*, 162 A.D.2d 308, 556 N.Y.S.2d 888 (1990). In *Soufeh*, the court stated:

> After plaintiff consigned certain precious stones to another jeweler, the stones were stolen from that jeweler's unattended car. Plaintiff's subsequent insurance claim was denied by his insurer because the loss did not occur on the premises specified in the policy, or in possession of certain types of employees or agents in transit. *Moreover, an exclusionary provision served to void coverage where the loss claimed resulted from property being left in an unattended vehicle. Accordingly we find that plaintiff's insurance claims were outside the scope of his policy.* (Emphasis added).

*Soufeh*, 556 N.Y.S.2d at 888.

We hold in this case the salesman did not have the jewelry in his possession at the time of the theft. We also hold the property was left in an unattended vehicle when he went into the building. Therefore, because the summary judgment evidence established the lack of coverage and the policy exclusion as a matter of law, the insurance company correctly denied the claim as outside the scope of the policy. The implied finding by the trial court that there was no coverage was correct.

### Extra-contractual Claims

In point of error one and a portion of point of error three, plaintiffs contend the summary judgments did not dispose of all their claims. Relying on *Viles v. Security Nat.*

*Ins. Co.,* 788 S.W.2d 566 (Tex.1990), plaintiffs argue the extra-contractual cause of action of good faith and fair dealing is not destroyed by the finding of no coverage. In *Viles,* however, the supreme court addressed the questionable activities of the insurance company in its investigation of the claim arising from the "special relationship" of the insurer and the insured. The court held that the homeowners' extra-contractual claim was not barred by their own breach of proof of loss required by the contract. *Id.* at 567. That insurance company breached the special relationship by failing to properly or timely investigate the claim which gave rise to a tort independent of the underlying claim. *Id.* That is not the situation in the present case.

 The supreme court has addressed the kind of situation presented in the present case and held contrary to the plaintiffs' contention. *See Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995) (holding extra-contractual claim would not lie where it was premised on denial of claim). An insured's extra-contractual claims are barred when they arise out of and are dependent upon the insured's contention that the insurance company failed to pay the claim. *Id.* When the denial of the claim is held to be appropriate, the extra-contractual claims must necessarily fail along with the breach of the policy contract claim, as in this case.

 Even in light of *Viles,* the general rule that there can be no claim for bad faith independent of the policy action when an insurer has promptly denied a claim that is in fact not covered remains true. Thus, only when the insurer, in denying the claim commits acts so extreme that an injury occurs to the insured which is clearly independent of the policy claim, will an exception to the general rule be found.[3] That is not the present case.

 We have held the denial of the claim to be appropriate. There are no alleged acts by the insurer so extreme as to cause injury to the plaintiffs which are clearly independent of the policy claim. The general rule applies in the present case. There may be

no extra-contractual recovery where the insured in not entitled to benefits under the contract of insurance which establishes the terms of coverage and sets out the duties and obligations of the insurer and insured. There was no breach of the policy contract, and because all the extra-contractual causes of action alleged by Tivoli and Goldman arose out of and are dependent upon the denial of the insurance claim, they must also fail. Points of error one and three are overruled.

Accordingly, the summary judgments are affirmed.

---

3. Wiggins notes that a good faith and fair dealing claim is limited and does not extend to the insurance company's agent. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 698 (Tex.1994).