COURT OF APPEALS 
SECOND DISTRICT OF TEXAS
FORT WORTH

NO. 
2-02-403-CV

CANTU SERVICES, INC., A TEXAS                                          APPELLANT 
FOR PROFIT CORPORATION
 
V.
 
GENERAL STAR INDEMNITY                                                      APPELLEE 
COMPANY
 
------------
 
FROM THE 
352ND DISTRICT COURT OF TARRANT COUNTY 
 
------------
 
MEMORANDUM OPINION



 
------------
I. Introduction
        This is an insurance-coverage dispute case. Appellant Cantu Services,
Inc. (“Cantu Services”) sued appellee General Star Indemnity Company
(“General Star”) for breach of contract and breach of the duty of good faith and
fair dealing. Cantu Services alleged that under the terms of its insurance policy
issued by General Star, General Star was liable for repairs necessitated by a
1995 hail storm during the policy period. General Star denied the claim and
asserted various affirmative defenses, including acceptance of benefits. 
General Star later moved for summary judgment on both the breach of contract
and breach of the duty of good faith causes of action pleaded by Cantu
Services. The trial court granted summary judgment for General Star. In two
issues, Cantu Services contends that the trial court erred by granting summary
judgment to General Star and by not ruling on Cantu Services’ motion for leave
for late designation of experts. We will affirm.
II. Factual Background
        From October 1, 1994 through October 1, 1996, General Star provided
Cantu Services with commercial property insurance on a shopping center in
Watauga, Texas. The policy included coverage for hail damage. On January
24, 1997, after the policy with General Star had expired and while the property
was insured by Commercial Union/CGU, Cantu Services notified its insurance
agent of a claim for damage to the roof of the property that occurred during the
policy period with General Star. General Star received notice of the claim on
January 28, 1997. The claim indicated that the property had “water damage
to ceiling overhead” and that the date of the loss was “unknown.” General Star
assigned Property Claims Services to investigate and adjust the loss and to
determine the date of the loss. James Greenhaw, with Property Claims
Services, inspected the shopping center on February 4, 1997. During the
inspection, Greenhaw was accompanied by Ricardo Cantu, the CEO of Cantu
Services, and James Pierce, a roofing contractor hired by Cantu Services.
        After inspecting the property, Greenhaw established the date of loss as
March 21, 1996, and estimated that the cost to repair the property was less
than the $2,500 policy deductible. Greenhaw noted evidence that hail had
struck the roof and saw other damage to the property, but he determined that
the leaks were caused by construction defects and maintenance problems. By
letter dated February 13, 1997, Greenhaw provided Cantu Services with the
results of his inspection and his repair estimate. Greenhaw invited Cantu
Services to review the estimate, diagram sheet, and photographs and to advise
him if it disputed the claim determination. Cantu Services sent a letter to
Greenhaw on March 5, 1997, disputing the adjustment and requesting that he
advise General Star of the dispute.
        After receiving Cantu Services’ dispute letter, Greenhaw reviewed his
findings and conducted a second inspection on March 31, 1997. At this
inspection, Greenhaw was accompanied by Ricky Richards, an engineer with
National Loss Consultants, Ricardo Cantu, and Eddie Arrington, a second
roofing consultant hired by Cantu Services. After the second inspection,
Greenhaw concluded that all the parapet walls on the building roof should be
replaced and that some other minor damage existed that was covered under the
policy. Greenhaw stated that during the inspection he insisted that “no
allowance should be provided for any repairs to the field areas on the roof.”
Arrington submitted to Greenhaw a quote for repair of the damages in the
amount of $6,922.24. Greenhaw accepted the quote by fax letter to Ricardo
Cantu on April 9, 1997, stating:
I received estimate from Eddie at Advanced Contractors, Inc. 
I can agree to this figure which will result in a net claim after
$2,500 deductible of $4,422.24. No other amounts such as
interior or walkway ceilings would be added as not caused by hail
damage to the roof. Can we proceed to process the claim on this
agreement? Please advise. [Emphasis added.]

        Two months later, Ricardo Cantu signed a Sworn Statement in Proof of
Loss verifying that the damages to the shopping center’s roof were $6,922.24
and submitted a claim for $4,422.24, the damage estimate minus the
deductible.


 The claim was asserted under Cantu Services’ 1995-1996 policy
with General Star. The amount of $4,422.24 was paid by General Star and
accepted by Cantu Services.
        In 1998, Cantu Services reported to Commercial Union, its insurance
carrier at the time, that its Watauga shopping center was experiencing new
leaks in its roof. Commercial Union retained Gary Moore to inspect the
property. Moore inspected the property on November 20, 1998, and
determined that the roof damage did not occur while Commercial Union insured
the property. Instead, Moore claimed that the roof leak was a result of hail
damage to the property that occurred on May 5, 1995,


 while General Star
insured the property. Moore estimated that the cost to repair the damage
would be $119,895.60.
        On March 4, 1999, Cantu Services notified General Star and Commercial
Union that it was asserting a claim for hail damage against both of them. On
behalf of General Star, Greenhaw rejected Cantu Services’ claim for hail
damage by letter dated March 30, 1999, stating that any alleged damage was
covered by the prior adjustment and payment. 
        On March 28, 2001, Cantu Services filed suit against General Star and
Commercial Union for breach of contract and breach of the duty of good faith
and fair dealing. Cantu Services alleged in its pleadings that General Star and
Commercial Union breached the terms of their insurance policies and their duty
of good faith and fair dealing by not paying for the hail damage to the roof that
was discovered in 1998. In response, General Star asserted affirmative
defenses of accord and satisfaction, acceptance of benefits, and waiver, all
stemming from Cantu Services’ acceptance of Greenhaw’s 1997 appraisal of
hail damage to the roof, as well as the acceptance of payment for $4,422.24.
General Star also alleged that Cantu Services’ bad faith claim was barred by the
statute of limitations. Cantu Services later dismissed Commercial Union from
the lawsuit.
        General Star moved for summary judgment on the above affirmative
defenses. The trial court granted summary judgment to General Star without
stating its basis for doing so. Cantu Services appeals from that decision.
III. Breach of Contract
        In its first issue, Cantu Services argues that the trial court erred by
granting summary judgment because General Star failed to prove any of its
affirmative defenses. A defendant is entitled to summary judgment on an
affirmative defense if the defendant conclusively proves all the elements of the
affirmative defense. KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999). To accomplish this, the defendant-movant
must present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law. Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 121 (Tex. 1996). When a trial court's order granting summary
judgment does not specify the ground or grounds relied on for its ruling,
summary judgment will be affirmed on appeal if any of the theories advanced
are meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex.
1995).
        Acceptance of benefits is a species of quasi-estoppel. Lopez v. Munoz,
Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000). Quasi-estoppel
precludes a party from asserting, to another's disadvantage, a right inconsistent
with a position previously taken. Id. The doctrine applies when it would be
unconscionable to allow a person to maintain a position inconsistent with one
to which he acquiesced, or from which he accepted a benefit. Id. The party
relying on quasi-estoppel need not show detrimental reliance. Stable Energy,
L.P. v. Newberry, 999 S.W.2d 538, 548 (Tex. App.—Austin 1999, pet.
denied). However, when a person accepting benefits does not have knowledge
of all material facts, ratification or estoppel cannot ensue from acceptance of
the benefits. Frazier v. Wynn, 472 S.W.2d 750, 753 (Tex. 1971); Herschbach
v. City of Corpus Christi, 883 S.W.2d 720, 737 (Tex. App.—Corpus Christi
1994, writ denied). 
        Cantu Services asserts that the evidence does not support summary
judgment on the ground of acceptance of benefits. We disagree. Cantu
Services accepted $4,422.24 from General Star for hail damage resulting to its
property in 1996.


 During both inspections performed by Greenhaw, Ricardo
Cantu was present, as well as a roofing consultant hired by Cantu Services.
Following the second inspection, Greenhaw determined that hail had damaged
the parapet walls and agreed with and accepted Eddie Arrington’s estimation
of the amount of damages to be paid by General Star for the damage; Arrington
represented Cantu Services. In the letter Greenhaw faxed to Ricardo Cantu
accepting Arrington’s estimation of damages, Greenhaw made it clear that no
payment was being made to Cantu Services for any damage to the “interior or
ceiling walkway” because that damage was “not caused by hail damage to the
roof.” Cantu Services accepted payment based on Greenhaw’s assessment
without disputing his assessment that damage to the interior or ceiling walkway
was not covered because it was not caused by hail damage. Therefore, Cantu
Services cannot now contend that General Star is also liable for this, or other
damage purportedly existing during Greenhaw’s second inspection. Cantu
Services had the opportunity to dispute Greenhaw’s second assessment and
Arrington’s calculations before accepting payment, but it did not do so.
        Cantu Services claims, however, that it was not aware of the 1995 hail
damage until after it received Moore’s report in November 1998, approximately
a year and a half after Greenhaw conducted his second investigation. 
According to Cantu Services, Moore concluded that the roof “was totaled by
the May 5, 1995 hail storm.” Although Moore’s report was not available until
1998, the alleged 1995 hail damage to the roof would have been visible during
Greenhaw’s investigations, especially if the roof had been “totaled” by hail.
Moreover, neither Greenhaw nor either of Cantu Services’ roofing consultants
found any hail damage responsible for leaks from the roof other than the
parapet walls. By accepting payment for the 1996 hail damage, Cantu Services
implicitly conceded that the property suffered no other hail damage before 1996
for which it could recover from General Star. 
        Cantu Services relies on three cases to assert that summary judgment
was improper on the ground of acceptance of benefits. See Lopez, 22 S.W.3d
at 864; Herschbach, 883 S.W.2d at 737; Stevens v. State Farm Fire & Cas.
Co., 929 S.W.2d 665, 673 (Tex. App.—Texarkana 1996, writ denied). We
find each of the cases distinguishable from the present case. Unlike the
plaintiffs in Lopez who were not aware that their attorneys had over-charged
them and did not agree to the over-charge, Cantu Services accepted
Greenhaw’s second assessment of the roof damage; Cantu Services’
acceptance occurred after it disputed Greenhaw’s first assessment of damages
and after it received Greenhaw’s fax letter stating that the leaks to the interior
and walkway hallways were not covered under the payment because they were
not the result of hail damage to the roof. See Lopez, 22 S.W.3d at 863-64.
Moreover, if the roof was “totaled” by hail in 1995, this material fact should
have been obvious to Cantu Services and its roofing consultants at the time it
accepted the insurance proceeds, unlike the accounting mistakes in Herschbach
that were not known to the firefighters when they accepted the retirement fund
benefits. 883 S.W.2d at 737. And unlike the plaintiff in Stevens v. State Farm
Fire & Casualty Co. who did not retain his own construction experts in
assessing damages and who signed a proof of loss form while continually
disputing the amount offered by the insurer, Cantu Services never disputed the
amount finally accepted, which was calculated by its own roofing consultant. 
929 S.W.2d at 673.
        Finally, there is no evidence that Greenhaw intentionally or inadvertently
concealed any information from Cantu Services that it would have needed to
make an informed decision as to whether to accept the insurance proceeds.
There is also no evidence that Cantu Services was not aware when it accepted
the insurance proceeds that its roofing consultant and Greenhaw had
established that hail had only damaged the parapet walls. Based on our review
of the record, we hold the trial court did not err in granting summary judgment
to General Star on Cantu Services’ breach of contract claim under the
acceptance of benefits defense. Accordingly, we need not address the other
bases for which General Star moved for summary judgment on the breach of
contract claim.
IV. Breach of the Duty of Good Faith and Fair Dealing 
        Cantu Services’ bad faith claim is based on General Star’s denial of Cantu
Service’s claim for payment of $119,895.60 in damages to its roof, estimated
by Moore to have occurred in 1995. Having determined that the trial court
correctly granted summary judgment to General Star on the breach of contract
claim, and because Cantu Services’ extra-contractual claim arises out of and is
dependent upon its contention that General Star acted in bad faith by denying
this claim, we hold the trial court did not err in granting summary judgment on
Cantu Services’ claim for breach of the duty of good faith and fair dealing. See,
e.g., Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 197 (Tex. 1998)
(holding no extra-contractual bad faith claim exists when insurer possesses
reasonable basis for denial of claim); Republic Ins. Co. v. Stoker, 903 S.W.2d
338, 341 (Tex. 1995) (same); Tivoli Corp. v. Jewelers Mut. Ins. Co., 932
S.W.2d 704, 712 (Tex. App.—San Antonio 1996, writ denied) (same).
Accordingly, we overrule Cantu Services’ first issue. 
V. Conclusion
        Having overruled Cantu Services’ first issue, we need not address its
remaining issue. See Tex. R. App. P. 47.1. We affirm the trial court’s
judgment. 
 
                                                  SUE WALKER
                                                  JUSTICE
 
PANEL B:   DAY, LIVINGSTON, and WALKER, JJ.

DELIVERED: September 25, 2003