Cantu Services v. General Star

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-403-CV

CANTU SERVICES, INC., A TEXAS APPELLANT

FOR PROFIT CORPORATION

V.

GENERAL STAR INDEMNITY APPELLEE

COMPANY

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

This is an insurance-coverage dispute case.  Appellant Cantu Services, Inc. (“Cantu Services”) sued appellee General Star Indemnity Company (“General Star”) for breach of contract and breach of the duty of good faith and fair dealing.  Cantu Services alleged that under the terms of its insurance policy issued by General Star, General Star was liable for repairs necessitated by a 1995 hail storm during the policy period.  General Star denied the claim and asserted various affirmative defenses, including acceptance of benefits.  General Star later moved for summary judgment on both the breach of contract and breach of the duty of good faith causes of action pleaded by Cantu Services.  The trial court granted summary judgment for General Star.  In two issues, Cantu Services contends that the trial court erred by granting summary judgment to General Star and by not ruling on Cantu Services’ motion for leave for late designation of experts.  We will affirm.

II.  Factual Background

From October 1, 1994 through October 1, 1996, General Star provided Cantu Services with commercial property insurance on a shopping center in Watauga, Texas.  The policy included coverage for hail damage.  On January 24, 1997, after the policy with General Star had expired and while the property was insured by Commercial Union/CGU, Cantu Services notified its insurance agent of a claim for damage to the roof of the property that occurred during the policy period with General Star.  General Star received notice of the claim on January 28, 1997.  The claim indicated that the property had “water damage to ceiling overhead” and that the date of the loss was “unknown.”  General Star assigned Property Claims Services to investigate and adjust the loss and to determine the date of the loss.  James Greenhaw, with Property Claims Services, inspected the shopping center on February 4, 1997.  During the inspection, Greenhaw was accompanied by Ricardo Cantu, the CEO of Cantu Services, and James Pierce, a roofing contractor hired by Cantu Services.

After inspecting the property, Greenhaw established the date of loss as March 21, 1996, and estimated that the cost to repair the property was less than the $2,500 policy deductible.  Greenhaw noted evidence that hail had struck the roof and saw other damage to the property, but he determined that the leaks were caused by construction defects and maintenance problems.  By letter dated February 13, 1997, Greenhaw provided Cantu Services with the results of his inspection and his repair estimate.  Greenhaw invited Cantu Services to review the estimate, diagram sheet, and photographs and to advise him if it disputed the claim determination.  Cantu Services sent a letter to Greenhaw on March 5, 1997, disputing the adjustment and requesting that he advise General Star of the dispute.

After receiving Cantu Services’ dispute letter, Greenhaw reviewed his findings and conducted a second inspection on March 31, 1997.  At this inspection, Greenhaw was accompanied by Ricky Richards, an engineer with National Loss Consultants, Ricardo Cantu, and Eddie Arrington, a second roofing consultant hired by Cantu Services.  After the second inspection, Greenhaw concluded that all the parapet walls on the building roof should be replaced and that some other minor damage existed that was covered under the policy.  Greenhaw stated that during the inspection he insisted that “no allowance should be provided for any repairs to the field areas on the roof.” Arrington submitted to Greenhaw a quote for repair of the damages in the amount of $6,922.24.  Greenhaw accepted the quote by fax letter to Ricardo Cantu on April 9, 1997, stating:

I received estimate from Eddie at Advanced Contractors, Inc.  I can agree to this figure which will result in a net claim after $2,500 deductible of $4,422.24.  
No other amounts such as interior or walkway ceilings would be added as not caused by hail damage to the roof.
  Can we proceed to process the claim on this agreement?  Please advise. [Emphasis added.]

Two months later, Ricardo Cantu signed a Sworn Statement in Proof of Loss verifying that the damages to the shopping center’s roof were $6,922.24 and submitted a claim for $4,422.24, the damage estimate minus the deductible.
(footnote: 2)  The claim was asserted under Cantu Services’ 1995-1996 policy with General Star.  The amount of $4,422.24 was paid by General Star and accepted by Cantu Services.

In 1998, Cantu Services reported to Commercial Union, its insurance carrier at the time, that its Watauga shopping center was experiencing new leaks in its roof.  Commercial Union retained Gary Moore to inspect the property.  Moore inspected the property on November 20, 1998, and determined that the roof damage did not occur while Commercial Union insured the property.  Instead, Moore claimed that the roof leak was a result of hail damage to the property that occurred on May 5, 1995,
(footnote: 3) while General Star insured the property.  Moore estimated that the cost to repair the damage would be $119,895.60.

On March 4, 1999, Cantu Services notified General Star and Commercial Union that it was asserting a claim for hail damage against both of them.  On behalf of General Star, Greenhaw rejected Cantu Services’ claim for hail damage by letter dated March 30, 1999, stating that any alleged damage was covered by the prior adjustment and payment. 

On March 28, 2001, Cantu Services filed suit against General Star and Commercial Union for breach of contract and breach of the duty of good faith and fair dealing.  Cantu Services alleged in its pleadings 
that General Star and Commercial Union breached the terms of their insurance policies and their duty of good faith and fair dealing by not paying for the hail damage to the roof that was discovered in 1998. 
 
In response, General Star asserted affirmative defenses of accord and satisfaction, acceptance of benefits, and waiver, all stemming from Cantu Services’ acceptance of Greenhaw’s 1997 appraisal of hail damage to the roof, as well as the acceptance of payment for 
$4,422.24
. General Star also alleged that Cantu Services’ bad faith claim was barred by the statute of limitations. 
 Cantu Services later dismissed Commercial Union from the lawsuit.

General Star moved for summary judgment on the above affirmative defenses.  The trial court granted summary judgment to General Star without stating its basis for doing so.  Cantu Services appeals from that decision.

III.  Breach of Contract

In its first issue, Cantu Services argues that the trial court erred by granting summary judgment because General Star failed to prove any of its affirmative defenses.  A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.  
KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.
, 988 S.W.2d 746, 748 (Tex. 1999).  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.  
Ryland Group, Inc. v. Hood,
 924 S.W.2d 120, 121 (Tex. 1996).
  
When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious.  
Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995)
.

Acceptance of benefits is a species of quasi-estoppel.  
Lopez v. Munoz, Hockema & Reed, L.L.P.
, 22 S.W.3d 857, 864 (Tex. 2000).  Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken.  
Id.
  The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.  
Id.  
The party relying on quasi-estoppel need not show detrimental reliance.  
Stable Energy, L.P. v. Newberry
, 999 S.W.2d 538, 548 (Tex. App.—Austin 1999, pet. denied).   However, when a person accepting benefits does not have knowledge of all material facts, ratification or estoppel cannot ensue from acceptance of the benefits.  
Frazier v. Wynn
, 472 S.W.2d 750, 753 (Tex. 1971); 
Herschbach v. City of Corpus Christi
, 883 S.W.2d 720, 737 (Tex. App.—Corpus Christi 1994, writ denied). 

Cantu Services asserts that the evidence does not support summary judgment on the ground of acceptance of benefits.  We disagree. Cantu Services accepted $4,422.24 from General Star for hail damage resulting to its property in 1996.
(footnote: 4)  During both inspections performed by Greenhaw, Ricardo Cantu was present, as well as a roofing consultant hired by Cantu Services. Following the second inspection, Greenhaw determined that hail had damaged the parapet walls and agreed with and accepted Eddie Arrington’s estimation of the amount of damages to be paid by General Star for the damage; Arrington represented Cantu Services.  In the letter Greenhaw faxed to Ricardo Cantu accepting Arrington’s estimation of damages, Greenhaw made it clear that no payment was being made to Cantu Services for any damage to the “interior or ceiling walkway” because that damage was “not caused by hail damage to the roof.”  Cantu Services accepted payment based on Greenhaw’s assessment without disputing his assessment that damage to the interior or ceiling walkway was not covered because it was not caused by hail damage.  Therefore, Cantu Services cannot now contend that General Star is also liable for this, or other damage purportedly existing during Greenhaw’s second inspection.  Cantu Services had the opportunity to dispute Greenhaw’s second assessment and Arrington’s calculations before accepting payment, but it did not do so.

Cantu Services claims, however, that it was not aware of the 1995 hail damage until after it received Moore’s report in November 1998, approximately a year and a half after Greenhaw conducted his second investigation.  According to Cantu Services, Moore concluded that the roof “was totaled by the May 5, 1995 hail storm.”  Although Moore’s report was not available until 1998, the alleged 1995 hail damage to the roof would have been visible during Greenhaw’s investigations, especially if the roof had been “totaled” by hail. Moreover, neither Greenhaw nor either of Cantu Services’ roofing consultants found any hail damage responsible for leaks from the roof other than the parapet walls.  By accepting payment for the 1996 hail damage, Cantu Services implicitly conceded that the property suffered no other hail damage before 1996 for which it could recover from General Star.  

Cantu Services relies on three cases to assert that summary judgment was improper on the ground of acceptance of benefits.  
See
 
Lopez, 
22 S.W.3d at 864; 
Herschbach, 
883 S.W.2d at 737; 
Stevens v. State Farm Fire & Cas. Co., 
929 S.W.2d 665, 673 (Tex. App.—Texarkana 1996, writ denied).
  
We find each of the cases distinguishable from the present case.  Unlike the plaintiffs in 
Lopez
 who were not aware that their attorneys had over-charged them and did not agree to the over-charge, Cantu Services accepted Greenhaw’s second assessment of the roof damage; Cantu Services’ acceptance occurred after it disputed Greenhaw’s first assessment of damages and after it received Greenhaw’s fax letter stating that the leaks to the interior and walkway hallways were not covered under the payment because they were not the result of hail damage to the roof. 
 See Lopez
, 22 S.W.3d at 863-64. Moreover, if the roof was “totaled” by hail in 1995, this material fact should have been obvious to Cantu Services and its roofing consultants at the time it accepted the insurance proceeds, unlike the accounting mistakes in 
Herschbach
 that were not known to the firefighters when they accepted the retirement fund benefits.  883 S.W.2d at 737.  And unlike the plaintiff in 
Stevens v. State Farm Fire & Casualty Co.
 who did not retain his own construction experts in assessing damages and who signed a proof of loss form while continually disputing the amount offered by the insurer, Cantu Services never disputed the amount finally accepted, which was calculated by its own roofing consultant.  929 S.W.2d at 673.

Finally, there is no evidence that Greenhaw intentionally or inadvertently concealed any information from Cantu Services that it would have needed to make an informed decision as to whether to accept the insurance proceeds. There is also no evidence that Cantu Services was not aware when it accepted the insurance proceeds that its roofing consultant and Greenhaw had established that hail had only damaged the parapet walls.  Based on our review of the record, we hold the trial court did not err in granting summary judgment to General Star on Cantu Services’ breach of contract claim under the acceptance of benefits defense.  Accordingly, we need not address the other bases for which General Star moved for summary judgment on the breach of contract claim.

IV.  Breach of the Duty of Good Faith and Fair Dealing
  

Cantu Services’ bad faith claim is based on General Star’s denial of Cantu Service’s claim for payment of $119,895.60 in damages to its roof, estimated by Moore to have occurred in 1995.  Having determined that the trial court correctly granted summary judgment to General Star on the breach of contract claim, and because Cantu Services’ extra-contractual claim arises out of and is dependent upon its contention that General Star acted in bad faith by denying this claim, we hold the trial court did not err in granting summary judgment on Cantu Services’ claim for breach of the duty of good faith and fair dealing.  
See, e.g., Provident Am. Ins. Co. v. Castaneda
, 988 S.W.2d 189, 197 (Tex. 1998) (holding no extra-contractual bad faith claim exists when insurer possesses reasonable basis for denial of claim); 
Republic Ins. Co. v. Stoker
, 903 S.W.2d 338, 341 (Tex. 1995) (same);
 Tivoli Corp. v. Jewelers Mut. Ins. Co.
, 932 S.W.2d 704, 712 (Tex. App.—San Antonio 1996, writ denied) (same). Accordingly, we overrule Cantu Services’ first issue. 

V.  Conclusion

Having overruled Cantu Services’ first issue, we need not address its remaining issue.  
See
 
Tex. R. App. P.
 47.1.  We affirm the trial court’s judgment. 

SUE WALKER

JUSTICE

PANEL B: DAY, LIVINGSTON, and WALKER, JJ.

DELIVERED: September 25, 2003

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Although Greenhaw had determined that the date of loss was March 21, 1996, the date of loss recited in the Sworn Statement in Proof of Loss is March 24, 1995.

3:
General Star states the date as May 5, 1995, on page 5 of its brief and July 5, 1995, on page 17 of its brief.  Cantu Services relies on the May 5, 1995 date throughout its brief.  Neither date alters the outcome of the case.

4:
Although the Sworn Statement in Proof of Loss states that the hail damage occurred in 1995, both parties refer to the hail damage assessed by Greenhaw as having occurred in 1996.  Other than the fact that the hail damage assessed by Greenhaw occurred before Greenhaw’s second inspection, the exact date of the loss is not relevant to the issue on appeal.