Affirmed and Memorandum Opinion filed July ___, 2010









Affirmed and Memorandum Opinion
filed July 1, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00973-CV



Chester
Humphrey, Appellant 

v.

AIG  Life
Insurance Company, Appellee 



On Appeal from
the 55th District Court

Harris County, Texas

Trial Court
Cause No. 2006-48246



 

MEMORANDUM OPINION 

Appellant, Chester Humphrey, sought continuous total
disability benefits from his employer’s insurance company, AIG Life Insurance
Company (“AIG”) following an on-the-job injury.  Because AIG denied Humphrey’s
claim, he sued AIG for breach of contract, violations of the Texas Insurance
Code and the Texas Deceptive Trade Practices Act (“DTPA”), and breach of the
duty of good faith and fair dealing.  

AIG moved for summary judgment, asserting there was
no evidence that AIG breached the terms of the policy because Humphrey could
not establish any coverage obligation under the terms of the policy.  The trial
court granted summary judgment to AIG, specifically holding that Humphrey
failed to present legally sufficient evidence to controvert AIG’s no-evidence
motion.  In multiple issues, Humphrey asserts the trial court erroneously
concluded that expert testimony was necessary to establish his total disability
and contends the trial court should have treated AIG’s motion as a traditional rather
than a no-evidence summary-judgment motion.  We affirm. 

I.  Background

Humphrey was employed by Pacific Motor Transport
Company (“Pacific Motor”) as a truck driver in 2001.  In June 2001, he injured
his back while attempting to lift a tarp to cover a load on his truck.  Humphrey
sought medical attention for his back pain a few days after the incident; a
physician examined him and prescribed medication and physical therapy. 
Humphrey underwent physical therapy for three to four months, but his pain was
not resolved.  His physician then sent him for an MRI, which showed he had
“multiple herniated disks” in his back.  

At the time of his injury, Pacific Motor had a
“special risk” policy through AIG.  This policy provides a “weekly accident
indemnity” when a covered employee, such as Humphrey, suffered an injury that
“totally and continuously disabled and prevented [the employee] from
performing” his job duties.  The following policy conditions must be fulfilled
to receive these weekly payments: 

a.         Such
period of disability commences within thirty days after the date of the
accident causing such injury; and

b.         Benefits
shall commence beginning with the day of continuous disability; and 

c.         Such
indemnity shall be payable at the rate of $350.00 per week not to exceed 70
percent of basic earnings; and

d.         The
maximum period for which such indemnity shall be payable for any one such
period of disability shall not exceed 104 weeks.

After his injury, Humphrey
sought and received weekly accident disability payments through the AIG policy.[1] 


Pursuant to the policy terms, his weekly disability
benefits expired in June 2003, two years (104 weeks) after his injury.  AIG
notified Humphrey he could seek “continuous total disability benefits” if he
could provide “due proof” that, inter alia, he was totally disabled and
that such total disability “resulted solely and directly” from the June 2001
on-the-job injury.  This requirement arose from the following policy rider:

CONTINUOUS TOTAL
DISABILITY INDEMNITY

I.          After
weekly Accident Indemnity benefits have been paid for 104 weeks, the Company
shall pay a weekly Total Disability Indemnity if the Insured Person is totally
and continuously disabled and prevented from engaging in any occupation for
which he is or could become qualified by reason of his education, training or experience.
We will pay the benefit described to an Insured Person when we receive due
proof that:

1.         he
is totally disabled and under age 70; and

2.         the
Insured Person has been granted a Social Security Disability Award for such disability;
and

3.         injury
occurred while the Insured Person was performing the duties of his occupation; and

4.         such
Total Disability:

a.         resulted
solely and directly from injury;

b.         began
within the Disability Commencement Period shown in Section III, 4 item (A);

c.         continued
without interruption for at least the waiting period of 104 weeks, and

d.         is
reasonably expected to continue without interruption until the Insured Person dies.

(emphasis added).

AIG ultimately denied Humphrey’s claim for total disability
benefits, prompting him to sue AIG for breach of contract, violations of the
Texas Insurance Code and DTPA, and breach of the duty of good faith and fair
dealing.  As the case neared the trial setting, AIG moved for no-evidence
summary judgment, arguing there was no evidence of any coverage obligation
because, inter alia, Humphrey could not prove, per the terms of the
policy, that his total disability “resulted solely and directly” from the
lifting injury.  In response, Humphrey submitted his affidavit and his wife’s,
both non-medical laypersons, purporting to link his physical symptoms to the
back injury he had suffered on the job.

In his affidavit, Humphrey stated that his pain began
contemporaneously with the on-the-job injury and worsened afterwards, leading
to weakness in his leg and necessitating occasional use of a walking cane.  He
stated that he had not suffered any injuries subsequent to the on-the-job
lifting injury.  He also claimed he had no problems with “severe back pain, nor
problems with pain in [his] legs or thighs,” before the injury, although he
acknowledged that, around 1980, he suffered a back injury, which resulted in “a
spinal fusion.”  Finally, he declared that he had completely recovered from his
1980 back injury and surgery and had no back problems or pain before his
on-the-job injury in June 2001.  

Humphrey’s wife stated in her affidavit that Humphrey
was fine before the on-the-job injury and did not sustain subsequent injuries. 
She further stated that Humphrey had no other health problems before the
accident, but that he has gained weight, been diagnosed with high blood
pressure and diabetes, and his leg that was affected by the back injury has
“caused him more problems.”  

Humphrey additionally filed his own motion for partial
summary judgment, to which he attached various documentation.  This
documentation included copies of several medical reports, which indicated he
suffered from lumbar radiculopathy secondary to herniated disc, edema and
cellulitis of the lower extremities, congestive heart failure, hypertension,
morbid obesity, and diabetes mellitus.  None of these reports indicated that
his medical issues resulted from his on-the-job injury.

The trial court granted summary judgment in favor of
AIG and denied Humphrey’s summary-judgment motion.  In its summary-judgment
order, it specifically ruled Humphrey failed to present at least “a scintilla
of evidence that Plaintiff’s total disability resulted solely and directly from
the injury.”  The court refused to consider the unqualified lay opinions of
Humphrey and his wife.  Because all of Humphrey’s causes of action were
premised upon the existence of insurance coverage, and the trial court
concluded there was no coverage, the court additionally ruled that “none of the
Plaintiff’s causes of action can survive.”  Humphrey filed a motion for new
trial, which was denied by the trial court.  This appeal timely ensued.

II.  Analysis

Humphrey has challenged the summary judgment on four
grounds:  (1) the trial court erred in granting summary judgment by requiring
expert testimony on medical causation; (2) the trial court erroneously treated AIG’s motion as a no-evidence, rather than traditional, motion for summary
judgment; (3) the trial court erred in granting summary judgment because AIG
failed to carry its summary-judgment burden; and (4) the trial court abused its
discretion in denying Humphrey’s motion for new trial.  Because Humphrey’s
second and third issues relate to the type of summary judgment motion AIG
filed, we consolidate and discuss them first as they govern the applicable
standard of review.

A.        AIG’s Motion

            In his second
issue in his original appellate brief, Humphrey argues the trial court should
have treated AIG’s no-evidence motion as a traditional summary-judgment motion
because AIG attached evidence to the motion.[2] 
However, the Texas Supreme Court has rejected this argument:  “[I]f a motion
brought solely under subsection (i) attaches evidence, that evidence should not
be considered unless it creates a fact question, but such a motion should not
be disregarded or treated as a motion under subsection (a) or (b).”  Binur
v. Jacobo, 135 S.W.3d 646, 651 (Tex. 2004).  In other words, attaching
evidence to an otherwise valid no-evidence motion for summary judgment does not
transform it into a traditional summary-judgment motion.  See id.  We
therefore overrule Humphrey’s second issue.

Similarly, in his third issue, Humphrey asserts that
the trial court improperly shifted the burden of proof to him because AIG’s
summary-judgment motion should have been treated as a traditional, rather than
a no-evidence, motion.  But because attaching evidence to a no-evidence motion
does not transform it into a traditional motion for summary judgment, this
issue likewise has no merit.  See id.  Thus, we overrule Humphrey’s
third issue, and turn to the merits of his first and fourth issues.

B.        Summary Judgment
for Failure to Provide Expert Testimony

            In his first
issue, Humphrey asserts that the trial court erred in granting AIG summary
judgment because he provided controverting lay testimony—his and his wife’s
affidavits—within the general experience and scope of common understanding that
established a causal connection between his on-the-job injury and his permanent
disability.  Stated differently, Humphrey contends that the trial court should
not have granted AIG summary judgment because he did not need to provide expert
testimony to establish that his total disability resulted “solely and directly”
from his injury.  In his fourth issue, Humphrey argues that the trial court
abused its discretion in denying his motion for new trial on this same basis.  

1.  Standard of Review 

We review a no-evidence summary judgment by the same
legal-sufficiency standard used to review directed verdicts.  See Mathis v.
Restoration Builders, Inc., 231 S.W.3d 47, 50 (Tex. App.—Houston [14th
Dist.] 2007, no pet.).  Under this familiar standard, we review the entire
record in the light most favorable to the nonmovant, indulging every reasonable
inference and resolving any doubts in his favor.  City of Keller v. Wilson,
168 S.W.3d 802, 824 (Tex. 2005).  A no-evidence motion for summary judgment
must be granted if (1) the moving party asserts that there is no evidence of
one or more essential elements of a claim or defense on which the adverse party
would have the burden of proof at trial, and (2) the respondent produces no
summary-judgment evidence raising a genuine issue of material fact on those
elements.  See Tex. R. Civ. P. 166a(i).  

We must affirm the summary judgment if the evidence
offered to prove a vital fact is no more than a scintilla or the rules of law
or evidence preclude the court from giving weight to the only evidence offered
to prove a vital fact.  See Walker v. Thomasson Lumber Co., 203 S.W.3d
470, 474 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  More than a scintilla
of evidence exists when the evidence rises to a level that would permit
“‘reasonable and fair-minded people to differ in their conclusions.’”  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  However, we
must not consider the evidence attached to a no-evidence summary judgment
motion except to the extent, if any, it creates a fact issue precluding summary
judgment.  See Binur, 135 S.W.3d at 651.  Finally, when both sides move
for summary judgment, as they did here, and the trial court grants one motion and
denies the other, we consider both sides’ summary-judgment evidence, determine
all questions presented, and render the judgment the trial court should have
rendered.  Embrey v. Royal Ins. Co. of Am., 22 S.W.3d 414, 415–16 (Tex. 2000).

2.  Necessity of Expert Testimony to Support
Humphrey’s Claim

Here, the trial court granted summary judgment on the
specific ground that Humphrey’s lay opinion could not be used to establish that
his total disability (and not merely his pain) “resulted solely and directly from
injury,” a necessary showing before coverage was owed under the AIG policy.  We
agree with the trial court.

Generally, expert testimony is necessary to establish
causation of medical conditions that are “outside the common knowledge and
experience of jurors.”  See Guevara v. Ferrer, 247 S.W.3d 662, 665 (Tex.
2007).  However, under limited circumstances, non-expert evidence may
sufficiently support a causation finding that links an event with one’s
physical condition.  Id. at 666.  This exception applies only in certain
cases in which general experience and common sense enable a layman to determine
the causal relationship with reasonable probability.  See id.; Morgan
v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex. 1984).  In such cases,
“lay testimony establishing a sequence of events which provides a strong,
logically traceable connection between the event and the condition is
sufficient proof of causation.”  Morgan, 675 S.W.2d at 733.

Typically, proof of causation by lay testimony may be
appropriate for common injuries like broken bones or pain following a car
accident.  See Guevara, 247 S.W.3d at 668 (“[C]ausation as to certain
types of pain, bone fractures, and similar basic conditions following an
automobile collision can be within the common experience of lay jurors.”).  The
Texas Supreme Court elaborated with the following hypothetical:

For example, if [the plaintiff] had been pulled from a
damaged automobile with overt injuries such as broken bones or lacerations, and
undisputed evidence which reasonable jurors could not disbelieve showed that he
did not have such injuries before the accident, then the physical conditions
and causal relationship between the accident and the conditions would
ordinarily be within the general experience and common knowledge of laypersons.

Guevara, 247 S.W.3d at
667; cf. Metro. Transit Auth. v. Harris County, No.
14-06-00513-CV, 2008 WL 4354503, at *8 (Tex. App.—Houston [14th Dist.] Aug. 26,
2008, no pet.) (mem. op.) (affirming judgment on lay testimony linking medical
expenses to automobile collision).  Thus, a fact-finder could fairly find a
causal link between an automobile collision and a person’s “immediate
post-accident condition which resulted in his being transported to an emergency
room and examined in the emergency room.”  Guevara, 247 S.W.3d at 669.  

Here, however, Humphrey’s medical issues are neither
common nor basic.  See id. at 669–70; City of Laredo v. Garza,
293 S.W.3d 625, 632–33 (Tex. App.—San Antonio 2009, no pet.) (rejecting
sufficiency of lay testimony alone to prove medical causation of disc
herniations and radiculopathy).  The record reflects that Humphrey suffers from
multilevel disc herniation at the L1-L2 and L2-L3 levels, with additional
non-contiguous “posterocentral spondylitic subligamentous herniation” at the
L5-S1 level, and additional disc bulges at several other levels.  According to
one of Humphrey’s treating physicians, these disc herniations have resulted in
lumbar radiculopathy.  

Further, although some of Humphrey’s disc complaints
are located in the lumbar region, they are not readily traceable to the lifting
injury alone because Humphrey has had previous spinal fusion surgery.   The
record also reflects that Humphrey is morbidly obese and suffers from edema and
cellulitis of the lower extremities, which renders him unable to walk without
assistance.  He produced a letter from another physician, E.K. Gaston, M.D.,
who opined Humphrey is totally and permanently disabled.  But Dr. Gaston linked
that condition to a combination of several medical ailments unrelated to
his 2001 back injury:  “[B]ecause [Humphrey] suffers from Congestive Heart
Failure, Hypertension, Morbid Obesity, Lumbar Radiculopathy and Diabetes
Mellitus, I feel that he is total[ly] and permanently disabled and cannot
return to any type of gainful employment.”  

In sum, given (1) the complex nature of Humphrey’s
purported back injury; (2) the combination of medical ailments unrelated to his
2001 back injury that were identified by Dr. Gaston as contributing to
Humphrey’s permanent disability; and (3) his prior spinal fusion surgery, we
conclude that the task of evaluating whether his “total disability” was caused
“solely and directly” by his 2001 back injury—as required by the terms of the
policy at issue here—is not within the general experience and common sense of a
layman.  Cf. Garza, 293 S.W.3d at 632–33; Tex. Employers’ Ins. Ass’n
v. Ramirez, 770 S.W.2d 896, 900 (Tex. App.—Corpus Christi 1989, writ
denied) (“We agree that in cases in which a layman would not, from his common
knowledge, understand a causal connection between the employment or injury and
the medical condition, expert testimony may be required.”).  We therefore agree
with the trial court that expert testimony was necessary under the facts of
this case to establish a causal link between Humphrey’s 2001 back injury and
his disability.[3]  Because
he provided no such expert testimony, he failed to produce at least a scintilla
of evidence as to a necessary element of his cause of action.  See Walker,
203 S.W.3d at 473–74.

We hold the trial court did not err by granting
summary judgment in favor of AIG.  Accordingly, we overrule Humphrey’s first
issue.  Likewise, we overrule Humphrey’s fourth issue.  The trial court did not
abuse its discretion by denying Humphrey’s motion for new trial because summary
judgment was proper in this case.[4]

III.  Conclusion

We conclude that the trial court properly granted
summary judgment in favor of AIG on Humphrey’s claims.  Having overruled his
four issues, we affirm the trial court’s order granting AIG’s motion for
summary judgment.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

Panel consists of Chief Justice Hedges
and Justices Seymore and Sullivan.









[1] Humphrey’s
medical expenses were also covered by AIG under the policy.  





[2] AIG
filed an original no-evidence summary judgment motion and a combined response
to Humphrey’s motion for partial summary judgment and “first amended
counter-motion for summary judgment.”  Although only the first motion was
titled, “Motion for No-Evidence Summary Judgment,” both clearly argue there is
no evidence AIG breached its contract because no coverage was owed to
Humphrey.  





[3] We note
that the insurance provision at issue in this case—that an insured must provide
“due proof” that his disability resulted “solely and directly” from his
on-the-job injury—requires proof of causation particularly rigorous relative to
coverage available through other types of insurance, such as worker’s
compensation insurance.  Cf. Ins. Co. of N. Am. v. Myers, 411 S.W.2d 710,
712–13 (Tex. 1966) (“Workmen compensation benefits are recoverable
notwithstanding such [pre-existing] condition if there was shown a causal
relation between the injury and death, i.e., the . . . injury . . . was
a contributing or producing cause of death.” (emphasis added)); State
Office of Risk Mgmt. v. Escalante, 162 S.W.3d 619, 623 (Tex. App.—El Paso
2005, pet. dism’d) (noting in worker’s compensation case that jury determined
work-related injury was “producing cause” of disability); Tex. Workers’ Comp.
Ins. Fund. v. Simon, 980 S.W.2d 730, 736 (Tex. App.—San Antonio 1998, no
pet.) (explaining in a worker’s compensation case that employment must be a
“producing cause” of the injury; thus, even if there are other causes for the
injury, the employment need only be “a” cause).  





[4] As noted
above, the trial court also concluded that, because Humphrey did not establish
coverage under the policy, his extra-contractual claims failed as well.  See,
e.g., Tivoli Corp. v. Jewelers Mut. Ins. Co., 932 S.W.2d 704, 712
(Tex. App.—San Antonio 1996, writ denied) (holding that extra-contractual
claims fail if denial of claim is appropriate).  Humphrey has not appealed this
ruling.