*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

## OPINION

No. 04-08-00504-CV

**CITY OF LAREDO**,
Appellant

v.

Juan **GARZA** Jr.,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2007CVQ000191-D2
Honorable Raul Vasquez, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed:   May 13, 2009

REVERSED AND RENDERED

The City of Laredo appeals the trial court's judgment, which found that Juan Garza Jr.'s

compensable injuries included L4-L5 and L5-S1 herniated discs, L5-S1 radiculopathy, and complex

regional pain syndrome. The City argues that there is legally insufficient evidence that these injuries

were caused by Garza's on-the-job accident because no expert medical evidence of causation was

presented at trial. In response, Garza argues that his own lay testimony is sufficient evidence of

causation and that no expert testimony was needed. Because we hold that expert medical evidence was needed to prove causation under the facts of this case and because no such evidence was presented, we reverse and render.

## BACKGROUND

For purposes of workers' compensation, the City of Laredo is self-insured. On August 30, 2005, thirty-seven-year-old Garza had been a groundskeeper for the City of Laredo for two years when he was injured while putting a heavy carpet into a trash dumpster. It is undisputed that he broke his kneecap and injured his ankle because of this incident. The parties, however, dispute whether his injury extended to and included L4-L5 and L5-S1 disc herniations, L5-S1 radiculopathy, and complex regional pain syndrome.

At the administrative level, after a Benefit Contested Case Hearing, the hearing officer determined that Garza's compensable injuries included his knee and his ankle, but not the injuries to his L4-L5 or L5-S1 lumbar disc herniations, L5-S1 radiculopathy, or complex regional pain syndrome. Garza appealed the hearing officer's decision to the appeals panel, which allowed the hearing officer's decision to become the final decision of the Texas Workers' Compensation Commission. Garza then appealed to district court in Webb County. At the bench trial, four witnesses testified: (1) Garza; (2) Garza's supervisor, Doroteo Vasquez; (3) the adjuster, Ronald Coleman; and (4) Dr. David Cruz.

*Juan Garza Jr.*

Garza testified that on August 30, 2005, he was standing on top of a utility trailer, helping two other employees put a heavy carpet, which weighed about 60-70 pounds, into a trash container, when "all of a sudden, the carpet came back toward me." According to Garza, when he tried to move

out of the way, his boot got caught on the side of the rail of the trailer, causing him to fall and break his knee. Garza testified that his knee "started to hurt a lot, and [his] back started to hurt, but not that much." But, when his knee began to swell, he started to pay more attention to his knee. When asked how his back was hurt, Garza testified that when he fell, he twisted.

Garza immediately told Doroteo Vasquez, his supervisor, about the accident. Garza admitted that he did not tell Vasquez he had injured his back. When asked why he failed to mention his back, Garza replied, "[Because] it didn't hurt that much."

On September 6, 2005, Garza spoke with the adjuster, Ronald Coleman. That conversation was recorded, and the transcript was admitted in evidence. The transcript shows that Garza did not mention his back to Coleman. And, Garza confirmed at trial that when he first spoke to Coleman, he did not tell Coleman about any back pain.

According to Garza, on September 29, 2005, a month after the accident, he started to complain to his doctors that his back hurt a lot. Garza testified that he had numbness in his leg and sharp pains. Garza also testified that he did not have any numbness in his leg before the accident.

*Doroteo Vasquez*

Garza's supervisor, Doroteo Vasquez, testified that on August 30, 2005, when Garza reported the accident, he said that he had fallen, twisting his ankle and injuring his knee. According to Vasquez, Garza did not report that any other body part had been injured. And, Garza did not say that he had twisted his back when he fell. According to Vasquez, it was not until the summer of 2007 that he learned from the City's attorney that Garza was also claiming a back injury.

*Ronald Coleman*

Ronald Coleman, a senior claims specialist, testified that he learned of Garza's claim in September 2005, and on September 6, 2005, he spoke with Garza by telephone and got a recorded interview. Coleman testified that Garza did not mention that he had also injured his back. According to Coleman, it was not until November 10, 2005, when he received a call from Dr. Cruz that he learned Garza was also claiming a back injury. In December 2005, he went to see Garza at his home. After Coleman interviewed Garza, the City filed a formal dispute.

*Dr. David Cruz*

Dr. Cruz, Garza's treating physician, testified that Garza first visited him on August 31, 2005, for injuries to the knee and ankle. According to Dr. Cruz, Garza did not mention that he had twisted and/or injured his back. On September 8, 2005, he saw Garza again, and Garza said he had pain to his left knee and foot. On September 29, 2005, he saw Garza again, and Garza said that he had had three days of numbness to his left leg, from his mid-thigh to his foot, and could not feel a pinching sensation.[1] Dr. Cruz testified that he saw Garza again on October 10, 2005, and that Garza only mentioned his knee and leg. According to Dr. Cruz, during Garza's visit of November 10, 2005, Garza said that he had pain to his upper lumbar area, which Dr. Cruz claims was Garza's first mention of back pain. According to Dr. Cruz, he believed the back pain to be a separate issue because "[w]e knew what the injury was and now he has low back pain." According to Dr. Cruz, if a person injuries his back, he will have pain immediately or within the next few days. And, although Dr. Cruz admitted that intense pain can mask other symptoms, Dr. Cruz testified that herniation pain starts immediately and that the most he had ever seen was pain starting a week after an accident.

---

[1] On cross-examination, Dr. Cruz admitted that these could be symptoms of a back injury.

According to Dr. Cruz, Garza's back injuries were degenerative and did not indicate acute injury. Dr. Cruz also testified that Garza did not have symptoms of complex regional pain syndrome. Thus, Dr. Cruz testified that in his opinion, Garza did not have complex regional pain syndrome.

In addition to the testimony of the above four witnesses, medical records were admitted in evidence without objection. At the conclusion of the bench trial, the trial court found that Garza's injuries included L4-L5 and L5-S1 disc herniations, L5-S1 radiculopathy, and complex regional pain syndrome.

## DISCUSSION

### A.      Standard of Review

At the administrative level, the hearing officer and appeals panel found that Garza's compensable injuries did not include L4-L5 or L5-S1 lumbar disc herniations, L5-S1 radiculopathy, or complex regional pain syndrome. After Garza appealed to the district court, the district court applied a modified de novo review. *See Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516-18 (Tex. 2007). That is, as the party appealing the appeals panel's decision, Garza had the burden at trial to prove by a preponderance of the evidence that his compensable injuries included L4-L5 and L5-S1 lumbar disc herniations, L5-S1 radiculopathy, and complex regional pain syndrome. *See id.*; *see* TEX. LAB. CODE ANN. §§ 410.301(a), 410.303 (Vernon 2006).

On appeal, the City of Laredo argues that there is legally insufficient evidence that these injuries were caused by Garza's on-the-job accident. We review the trial court's findings in the same manner as jury findings. *State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 689 (Tex. App.—Waco 2008, no pet.). Thus, in reviewing the legal sufficiency of the evidence, we look at the evidence in the light most favorable to the trial court's findings, crediting evidence favorable to those

findings if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007).

> B.   *Was expert medical testimony necessary to establish causation under the facts of this case?*

To be probative, expert testimony must be based on reasonable medical probability. *Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966). Expert testimony that is not based on a reasonable medical probability, but that instead relies on possibility, speculation, or surmise, does not assist the trier of fact and cannot support a judgment. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997). Here, the City argues that because there is no expert medical evidence to support the trial court's findings that Garza's injuries were caused by his on-the-job accident, the evidence is legally insufficient. Garza responds by arguing that expert medical evidence was not necessary and that he presented sufficient lay testimony of causation.

In *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007), the Texas Supreme Court reiterated the longstanding general rule that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *See, e.g.*, *Myers*, 411 S.W.2d at 713 (explaining that an "inference that a pre-existing tumor was activated and the deadly effects of a malignancy accelerated by an injury" was a "question of science determinable only from the testimony of expert medical professionals"); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) (explaining that because "the diagnosis of skull fractures is not within the experience of the ordinary layman," expert testimony was needed); *Kaster v. Woodson*, 123 S.W.2d 981, 983 (Tex. Civ. App.—Austin 1938, writ ref'd) ("What is an infection and from whence did it come are matters determinable only by medical experts."). However, the court acknowledged "an exception to the general rule whereby causation findings linking events and physical conditions could, under certain

circumstances, be sufficiently supported by non-expert evidence." *Guevara*, 247 S.W.3d at 666. The court explained that lay testimony is "adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between an event and the condition." *Id.* Thus, generally, "lay testimony establishing a sequence of events [that] provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Id.*

In discussing the exception to the general rule that expert testimony is needed to prove causation as to medical conditions, the supreme court noted the following:

> In personal injury cases, trial evidence generally includes evidence of the pre-occurrence condition of the injured person, circumstances surrounding the occurrence, and the course of the injured person's physical condition and progress after the occurrence. The record before us contains lay testimony about [the plaintiff]'s pre-accident physical condition, his activities and other events leading up to the accident, the accident, an investigating police officer's report, and post-accident events including medical treatments. This type of evidence "establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition" could suffice to support a causation finding between the automobile accident and basic physical conditions which *(1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents*.

*Id.* at 666-67 (emphasis added). The court in *Guevara* explained that if the plaintiff had been pulled from a damaged automobile with overt injuries such as broken bones or lacerations, and undisputed evidence that reasonable jurors could not disbelieve showed the plaintiff did not have such injuries before the accident, then "the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons." *Id.* at 667. Thus, it would be within the general experience and common knowledge of

laypersons that the accident caused the plaintiff to be transported to a medical care facility and to be cared for medically to some degree. *Id.*

However, the court warned that in light of *Daubert* and *Robinson*, which require trial judges to scrutinize evidence for reliability, temporal proximity alone does not meet the standards of scientific reliability and does not, by itself, support an inference of medical causation. *Id.* "This is not to say that evidence of temporal proximity, that is, closeness in time, between an event and subsequently manifested physical conditions is irrelevant to the causation issue." *Id.* at 668. "Evidence of an event followed closely by manifestation of or treatment for conditions [that] did not appear before the event raises suspicion that the event at issue caused the conditions." *Id.* "But suspicion has not been and is not legally sufficient to support a finding of legal causation." *Id.* "When evidence is so weak as to do no more than create a surmise or suspicion of the matter to be proved, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Id.* (citation omitted). "Nevertheless, *when combined with other causation evidence*, evidence that conditions exhibited themselves or were diagnosed shortly after an event may be probative in determining causation." *Id.* (emphasis added).

"Undoubtedly, the causal connection between some events and conditions of a basic nature (and treatment for such conditions) are within a layperson's general experience and common sense." *Id.* "This conclusion accords with human experience, our prior cases, and the law in other states where courts have held that causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors." *Id.* Thus, the supreme court concluded that "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained

of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Id.*

In applying *Guevara*'s limited exception to the facts of this case, we must consider whether both Garza's on-the-job accident and the injuries complained of are such that "the general experience and common sense of laypersons" are sufficient to evaluate his injuries and whether they were probably caused by his on-the-job accident. *See id.* That is, we must consider whether the evidence presented at trial established a sequence of events that provided a strong, logically traceable connection between Garza's on-the-job accident and his injuries sufficient to support a causation finding between his accident and his "basic physical conditions" (his injuries) that (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons caused by the kind of accident from which Garza suffered. *See id.* at 667.

In his brief, Garza claims that the following evidence establishes such a strong, logically traceable connection between his back injuries and his accident:

(1)     Garza testified that he had never had a back injury before the accident.

(2)     When asked whether Garza had had back problems before the accident, Garza's supervisor, Doroteo Vasquez, replied: "Not that I know, sir." Similarly, when asked if Garza had ever complained about his back before the accident, Vasquez replied, "No, sir."

(3)     When asked how he hurt his back, Garza testified, "When I fell, I twisted."

(4)     When asked why he did not report his back immediately, Garza replied, "[Because] it didn't hurt that much . . ."

(5)     Dr. Cruz's testimony that intense pain can mask other conditions.

6)     Dr. Cruz's testimony that in November 2005 Garza might have suffered from a back problem.

We first note that there is an attenuation issue in this case. Unlike other cases finding lay testimony sufficient evidence of causation, Garza did not immediately tell anyone that he had hurt his back after his on-the-job accident. *See State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 691 (Tex. App.—Waco 2008, no pet.) (explaining that employee who was pushed into a wall and complained of lower back pain the next day to a doctor did not need expert testimony to prove her back injuries); *Metropolitan Transit Auth. v. Harris County*, No. 14-06-00513-CV, 2008 WL 4354503, at *8 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that employee's testimony established "a sequence of events from which the jury could properly infer, without the aid of expert medical testimony, that the collision with the Metro bus caused [the employee] to suffer injury, and that his medical expenses were causally related to this accident"); *Southwestern Bell Tel., L.P. v. Valadez*, No. 02-07-00129-CV, 2008 WL 425746, at *4 (Tex. App.—Fort Worth 2008, no pet.) (holding that lay testimony of man who was knocked unconscious after falling in a hole made by telephone company and who, upon regaining consciousness, immediately felt pain to his left shoulder and for which he sought treatment, evaluation, and X-ray on the day of the accident, is within the layperson's general experience and common sense). According to Garza, he waited a month before telling Dr. Cruz that his back hurt.

Further, at trial, Garza testified that he "twisted" his back and did not tell anyone that he hurt it because "it didn't hurt that much." We note that although Dr. Cruz testified that Garza's fractured knee could have masked Garza's back pain, Dr. Cruz also testified that he would expect someone with a herniated back to report a back injury, at the most, a week after the injury. Additionally, we note that Dr. Cruz testified that there are possible causes of Garza's back pain other than his on-the-

job accident. Finally, we note that this is not a case involving simple back strain. Garza is claiming that he suffers from disc herniations and radiculopathy as a result of his on-the-job accident. The medical reports in this case conflict with regard to whether Garza suffered from disc bulges or whether he suffered from disc herniations. Such conflicting medical reports certainly point to the need for expert testimony. Thus, given (1) the lack of temporal proximity between the accident and Garza's report of back pain; (2) the medical expert's testimony that someone with disc herniations, even if that pain is masked by another injury, should feel intense pain, at the most, a week after the incident; (3) the expert's testimony that Garza's back injuries could be caused by something other than the accident; and (4) the fact that the medical records themselves contain conflicting opinions with regard to whether Garza suffered from disc bulges or disc herniations, we cannot say that the evidence in this case established such a strong, logically traceable connection between Garza's on-the-job accident and his injuries such that a layperson could evaluate whether his claimed medical conditions were probably caused by his on-the-job accident. Thus, Garza needed more than lay testimony to prove that his on-the-job accident caused his disc herniations and radiculopathy. Because there was no expert causation evidence, we hold that there is legally insufficient evidence.

Lastly, we note that in addition to the disc herniations and radiculopathy, the City also claims that there is legally insufficient evidence that Garza's complex regional pain syndrome was caused by his on-the-job accident. First, we note that laypersons do not have the common knowledge and experience to adequately evaluate the cause of complex regional pain syndrome. *See Am. Cas. Co. v. Zachero*, No. 11-07-00183-CV, 2008 WL 5205642, at \*2 (Tex. App.—Eastland 2008, no pet.) (holding that expert testimony was needed to prove that on-the-job accident caused osteoarthritis and chondromalacia in knee); *Miller v. Kampbell*, No. 5:07CV111, 2009 WL 137521, at \*4 (E.D. Tex.

Jan. 20, 2009) (holding that a layman would not know what causes venous thrombosis). Second, we note that Garza has not pointed to any evidence, layman or expert, that his on-the-job accident caused his regional complex pain syndrome. Thus, we also hold that there is legally insufficient evidence that Garza's on-the-job accident caused his complex regional pain syndrome.[2]

## CONCLUSION

Because there is legally insufficient evidence of causation, we reverse the trial court's judgment and render judgment that Garza's compensable injury does not extend to and does not include L4-L5 and L5-S1 disc herniations, L5-S1 radiculopathy, and complex regional pain syndrome.

Karen Angelini, Justice

---

[2] Having held that there is legally insufficient evidence to support the trial court's findings, we need not reach the City's other issues.