

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00035-CV

**VIA METROPOLITAN TRANSIT AUTHORITY**
Appellant

v.

**Jose BARRAZA and Ruben Barraza**,
Appellees

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 352025
Honorable Irene Rios, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 4, 2013

AFFIRMED

After a jury trial, the trial court entered judgment in favor of appellees Jose Barraza and Ruben Barraza, who filed suit against appellant VIA Metropolitan Transit Authority ("VIA") and others alleging negligence.  VIA appeals, contending: (1) the trial court lacked subject-matter jurisdiction over the case; (2) the evidence is legally and factually insufficient to support the jury's damage awards; (3) the trial court erred in refusing to give a "sudden emergency instruction"; (4) the trial court erred in excluding present sense impression statements as hearsay; and (5) the Barrazas' counsel made incurably harmful jury arguments.

BACKGROUND

VIA bus driver Antonio Paredes was driving a bus traveling westbound along Commerce Street behind a truck driven by Sidonio Cuevas. Shortly after crossing General McMullen Drive, Cuevas signaled and began turning into a drug store parking lot. As Cuevas turned, the VIA bus collided with the rear end of Cuevas's truck. In an attempt to avoid the collision, Paredes applied the brakes of the bus firmly, causing some passengers, including the Barrazas, to fall from their seats. VIA and Paredes claimed Cuevas caused the accident by stopping his vehicle mid-turn into the parking lot. The Barrazas claimed Paredes caused the accident because he was following Cuevas too closely.

The Barrazas filed suit against VIA, Paredes, and Cuevas in Bexar County Court at Law No. 3 on August 26, 2009. Ultimately, the case was tried to a jury.[1] The jury entered liability and damage findings in favor of the Barrazas. More specifically, the jury awarded Jose Barraza damages for past and future physical pain and mental anguish, past physical impairment, and past medical expenses. The jury awarded Ruben Barraza damages for past and future physical pain and mental anguish, past and future loss of earning capacity, past and future physical impairment, and past and future medical expenses. The trial court rendered judgment based on the jury's verdict. Thereafter, VIA perfected this appeal.

ANALYSIS

The issues presented on appeal are: (1) whether the Bexar County Court at Law lacked subject-matter jurisdiction due to the amount in controversy pled by the Barrazas in their petition; (2) whether there is legally and factually sufficient evidence to support the jury's damage awards;

---

[1] Antonio Paredes, the VIA bus driver, and Sidonio Cuevas, the driver of the truck, were originally sued individually by the Barrazas. However, they ultimately settled with the Barazzas and were not parties to the suit at the time of trial.

(3) whether the trial court erred in refusing to give a "sudden emergency instruction"; (4) whether the trial court erred in excluding "courtesy cards" filled out by bus passengers after the accident as inadmissible hearsay; and (5) whether counsel for the Barrazas made incurably harmful jury arguments during closing arguments.

### A. Jurisdiction

In its first issue, VIA contends the trial court lacked subject-matter jurisdiction over the matter because the aggregate amount[2] of damages sought in the Barrazas' petition exceeded the statutory limit set out in section 25.0003(c)(1) of the Texas Government Code as it stood when the suit was filed in 2009. Although VIA did not raise the issue of subject-matter jurisdiction until its post-judgment motions, "[j]urisdiction over the subject matter of an action may not be conferred or taken away by consent or waiver, and its absence may be raised at any time." *Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010). Subject-matter jurisdiction is a legal question that we review *de novo*. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When reviewing the amount in controversy for jurisdictional purposes, "[j]urisdiction is based on the allegations in the petition about the amount in controversy." *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996). In this case, however, the court's review of VIA's challenge is influenced by the fact that the statutory jurisdictional limits of the trial court changed between the time the petition was filed and when trial began.

In their original petition, the Barrazas alleged they suffered damages in the amount of $100,000 for each brother.[3] When the petition was filed in 2009, the statutory county court was

---

[2] VIA contends the Barrazas' damage claims must be aggregated under section 24.009 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 24.009 (West 2004). Although the applicability of section 24.009 to the issue of a statutory county court's *maximum* jurisdictional amount is debatable, *see Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 74 n.4 (Tex. 2000), we apply the aggregation statute *arguendo*.

[3] The Barrazas contend they did not seek $100,000.00 per brother. Rather, they contend they sought damages up to the "maximum amount of $100,000" for each brother. This argument is unconvincing because the pleading stated

limited to deciding civil cases in which the matter in controversy did not exceed $100,000.00. *See* Act of July 19, 2011, 82nd Leg., 1st C.S., ch. 3, 2011 Tex. Gen. Laws __ (amended 2011) (current version at TEX. GOVT. CODE § 25.0003(c)(1) (West Supp. 2013)). Section 25.0003(c)(1) was amended in 2011 to reflect an increase in the statutory county court's jurisdiction from "$100,000" to "$200,000." *See id.* This statutory amendment became effective before trial on the merits began in July 2012. *See* Act of 2011, 82nd Leg., 1st C.S., ch. 3, 2011 Tex. Gen. Laws __ (amended 2011) (stating Act effective January 1, 2012). As VIA acknowledges in a footnote in its brief, "the United States Supreme Court has held that a new statute conferring or ousting jurisdiction applies to existing suits because such laws typically do not affect substantive rights." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) ("We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed")). Therefore, because application of the amended statutory jurisdictional limit under section 25.0003(c)(1) would not amount to an unconstitutional ex-post facto application of law, the court reviews VIA's jurisdictional claim in light of the increased $200,000.00 limit.

As noted above, we must determine whether a plaintiff's claim is within a court's monetary jurisdiction limits by reviewing the allegations in the petition. *See Cazarez*, 937 S.W.2d at 449. Here, the Barrazas pled an aggregate of $200,000 in damages. This amount is within the court's statutory limits under the applicable statute. *See* TEX. GOVT. CODE § 25.0003(c)(1) (West Supp. 2013). Therefore, we hold the trial court had jurisdiction and overrule VIA's first issue.

---

"damages *are in* a maximum amount of $100,000 for each plaintiff." (emphasis added) The language of "are in" is definite and not equal to "up to" language that the Barrazas would have this court read into the petition.

### B.  Sufficiency of the Evidence

In its second issue, VIA challenges the legal and factual sufficiency of the evidence to support the jury's damage awards.  More specifically, VIA argues: (1) medical testimony was required, but absent, to establish a causal connection between the accident and all or most of the Barrazas' complaints; (2) the Barrazas identified no substantial, permanent, or distinct physical impairment compensable under the law; (3) the Barrazas offered insufficient evidence of medical expenses that were actually paid or incurred, as required by statute; and (4) Ruben Barraza failed to prove a loss of future earning capacity, either completely or in the amount found by the jury.

"When reviewing a legal sufficiency challenge, we review the evidence in a light most favorable to the trial court's judgment and indulge every reasonable inference to support the judgment."  *Drury Sw., Inc. v. Louie Ledeaux # 1, Inc.*, 350 S.W.3d 287, 291 (Tex. App.—San Antonio 2011, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We sustain a legal sufficiency challenge where the record shows: (1) a complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.  *Drury Sw.*, 350 S.W.3d at 291 (quoting *City of Keller*, 168 S.W.3d at 810).  Further, more than a scintilla of evidence exists for legal sufficiency review if the evidence allows for reasonable minds to reach differing conclusions about a vital fact's existence.  *Drury Sw.*, 350 S.W.3d at 291 (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782–83 (Tex. 2001)).

As opposed to legal insufficiency review, a reviewing court can only set aside a verdict for factual insufficiency when, after considering and weighing all of the evidence, the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that the verdict is clearly wrong and unjust.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

To set aside a verdict, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Dow Chem. Co.*, 46 S.W.3d at 242.

### 1. *Medical Expert Testimony to Establish Causation – Jose Barraza*

The Barrazas' underlying claim is that VIA's negligence caused their injuries. VIA argues the lay opinion testimony of both Jose and Ruben Barraza, as well as the testimony of Dr. Sanjay Misra regarding Ruben's injuries, failed to "show that such negligence was the proximate, and not the remote, cause of the resulting injuries . . . [and] justify the conclusion that such injury was the natural and probable result thereof." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (quoting *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex. 1939)).

Jose Barraza claimed he injured his wrist, back, and knee as a result of the accident. The primary evidence supporting this claim is testimony from Jose. He presented no expert testimony with regard to the cause of his alleged injuries.[4]

The longstanding general rule is expert testimony is necessary in establishing causation as to medical conditions generally outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). In those cases in which general experience and common sense enable a juror to determine, with reasonable probability, the causal relationship between an event and the condition, lay testimony is sufficient to prove causation. *Id.* at 666. Therefore, generally, "lay testimony establishing a sequence of events [that] provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *City of Laredo v. Garza*, 293 S.W.3d 625, 630 (Tex. App.—San Antonio, no pet.)

---

[4] Jose Barraza also introduced his medical records to establish causation. However, to the extent the medical records provide evidence of causation, they are based on Jose's statements to health care providers. Therefore, the documents do not offer additional evidence of causation.

(quoting *Guevara* 247 S.W.3d at 666). For example, "this conclusion accords with human experience, our prior cases, and the law in other states where courts have held that causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors." *Guevara*, 247 S.W.3d at 668.

At trial, Jose testified the bus did not have seatbelts. Jose testified that during the collision he fell to the floor and another passenger landed on top of him. He also testified his hand hit "the pipe that's in the back of the bus." When asked if experienced any pain immediately after he got off of the bus, he responded "yes, a lot . . . my hand, my back, my knee." Jose then testified about his physical condition before the accident, his pain after the accident, and his various attempts to obtain treatment for his injuries.

We hold Jose's lay opinion testimony establishes a sequence of events providing a strong, logically traceable connection between the accident and the injuries sustained. *See Garza*, 293 S.W.3d at 630. His testimony establishes the basic conditions following the collision, and we hold this information is within the common experience of lay jurors. *See id.* Common sense indicates that a man in his late fifties who falls to the floor, collides with a "pipe" (presumably a bus handrail) on the way down, and has another passenger fall on top of him will likely sustain injuries as a direct result of what caused the sequence of events—the sudden braking to mitigate or avoid the collision. Therefore, we hold expert testimony was unnecessary to establish the chain of causation for the injuries sustained by Jose. *Guevara*, 247 S.W.3d at 666.

Although VIA points to evidence suggesting Jose's injuries could actually be due to past circumstances, it is not evidence establishing conclusively the opposite of a vital fact as required by *City of Keller*. 168 S.W.3d at 810. Rather, we hold the lay opinion testimony is such that reasonable minds could differ about the vital fact's existence; therefore, the evidence presented to prove causation is more than a mere scintilla as required by *City of Keller* to be legally sufficient.

*See id.* Further, we hold the evidence is neither so weak nor the finding so against the great weight and preponderance of the evidence that the verdict is clearly wrong and unjust as required by *Dow Chem. Co.* in order to set aside the verdict for factual insufficiency. *See* 46 S.W.3d at 242. The jury heard direct and cross examination of Jose, and saw various evidentiary exhibits and, as finders of fact, reached the conclusion VIA caused the injuries.

### 2. *Medical Expert Testimony to Establish Causation – Ruben Barraza*

Ruben Barraza claimed he injured his left foot and left shoulder as a result of the bus accident. To support his damage claims, Ruben Barraza produced his own testimony, various medical records, and the deposition testimony of his treating orthopedic surgeon, Dr. Sanjay Misra. Dr. Misra provided testimony only as to the alleged shoulder injury.

At trial, Ruben testified that prior to the bus accident he had no injuries to either his left foot or left shoulder. Ruben testified the collision caused his left shoulder to collide with an uncovered pipe and his left foot to collide with a metal plate. Although Ruben testified he turned down an offer of medical assistance from a police officer at the scene "because I didn't feel anything," he stated he was in shock and asserted "I was frightened and I wanted them to look after my brother." Ruben said that by the next morning, his foot began to swell as a result of the accident and he could not walk. Three days after the accident, Ruben went to International Rehabilitation complaining of left foot and shoulder injuries.

As we held with regard to Jose's testimony, we hold Ruben's lay opinion testimony establishes a sequence of events providing a strong, logically traceable connection between the bus accident and the injuries sustained that exhibits the basic conditions following an automobile collision that is within the common experience of lay jurors. *See Garza*, 293 S.W.3d at 630. Common experience indicates that when a person who claims to have no previous injuries to a foot and shoulder is involved in a bus accident where both of the body parts collide with metal

surfaces, a metal plate and pipe respectively, the source of the collision is likely the cause for the resulting injuries. *See id.* Although Ruben's testimony and responses are, at times, difficult to follow because of the need for an interpreter, they establish a logical sequence of events to explain his injuries. Therefore, we hold expert testimony was unnecessary to establish the chain of causation for the injuries Ruben sustained. *See Guevara*, 247 S.W.3d at 666.

Although VIA attacks the expert testimony of Dr. Misra with regard to Ruben's shoulder injury, we hold Ruben's lay opinion testimony was sufficient to establish causation. Accordingly, we need not determine the propriety of Dr. Misra's testimony.

We hold there is legally and factually sufficient evidence to support the jury's finding that VIA was the proximate cause of Ruben's injuries.[5]

As it did with regard to Jose's injuries, VIA points to evidence suggesting Ruben's injuries could have resulted from something other than the accident, e.g., bone degeneration and years of manual labor. Although relevant, we hold it is not evidence establishing conclusively the opposite of a vital fact as required by *City of Keller*. 168 S.W.3d at 810. Rather, Ruben's lay opinion testimony regarding causation is such that reasonable minds could differ about the vital fact's existence; therefore, the evidence presented to prove causation is more than a mere scintilla as required by *City of Keller* to be legally sufficient. *See id*. Further, we hold the evidence is neither so weak nor the finding so against the great weight and preponderance of the evidence that the verdict is clearly wrong and unjust as required by *Dow Chem. Co.*. *See* 46 S.W.3d at 242. The jury, as fact finder, decided to believe the sequence of events as set out by Ruben, which is neither

---

[5] Even though Ruben presented his medical records as proof of causation, the parties mainly debate the efficacy of Ruben's and Dr. Misra's testimony. Given the sufficiency of the lay opinion, there is no need to address Ruben's use of medical records as evidence of causation.

clearly wrong nor unjust.  Therefore, we hold the evidence of causation for the injuries sustained by Ruben Barraza is factually sufficient.

### 3.  *Physical Impairment*

VIA challenges the legal and factual sufficiency of the evidence supporting the jury's award of damages to the Barrazas for physical impairment.  The jury returned a verdict awarding Jose $5,000.00 for physical impairment in the past, and Ruben a total of $10,300.00 for physical impairment in the past and future combined.  A plaintiff may recover damages for physical impairment by showing: (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damage elements; and (2) these distinct injuries have had a "substantial" effect.  *Tagle v. Galvan*, 155 S.W.3d 510, 519 (Tex. App.—San Antonio 2004, no pet.) (citing *Patlyek v. Brittain*, 149 S.W.3d 781, 785 (Tex. App.—Austin 2004, pet. denied)).  Further, "unless the separate and distinct loss is obvious, the plaintiff must produce some evidence showing the tasks or activities that he can no longer perform." *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 39 (Tex. App.—Tyler 2003, pet. denied); *accord Bell v. Castro*, No. 04-11-00927-CV, 2012 WL 5874322 at *3 (Tex. App.—San Antonio Nov. 21, 2012, no pet.) (mem. op.).  Stated alternatively, in order to avoid improperly substituting our judgment for that of the jury, we look to whether: (1) impediments to the plaintiff's non-work related activities are obvious from the injury itself; or (2) the plaintiff produced some evidence of specific non-work related tasks or activities he can no longer perform.  *See Patlyek,* 149 S.W.3d at 787 (holding that "[b]y focusing on actual impediments to the plaintiff's activities, a reviewing court can distinguish losses comprising physical impairment from the pain, suffering, inconvenience, or distress compensable in and of themselves through pain and suffering or mental anguish damages.  By focusing on activities unrelated to work, a reviewing court can distinguish losses comprising physical impairment from those comprising lost wages or earning capacity.").

Among other evidence presented at trial to support a finding of physical impairment, Jose Barraza testified that after the accident he did not have any strength in his wrist and it impacted his ability to work as a diesel mechanic. Although he did not direct the jury to any specific non-work related activities impeded by the injury, when viewing the evidence in a light most favorable to jury's finding, as we must, it is obvious that a wrist injury limiting the ability to work as a mechanic simultaneously limits the ability to do everyday activities with the same wrist such that a finding of physical impairment is justified. *See id.*; *see, e.g., id.* at 788 ("Viewing the evidence in the light most favorable to [the plaintiff] . . . [b]eing unable to rotate one's head completely or normally would have an obvious impact on day-to-day activities, such as driving a car, responding to one's name when called, or any recreational activity involving movement of one's head."). Therefore, we hold there is more than a scintilla of evidence of physical impairment as required by a legal sufficiency review because Jose was obviously impeded from participating in non-work related activities due to his wrist injury. *See City of Keller*, 168 S.W.3d at 810. Even if the jury's award of physical impairment damages was based on this evidence alone, we hold the evidence is neither so weak nor the finding so against the great weight and preponderance of the evidence that the $5,000.00 award for non-work related activities obviously impacted by a loss of wrist strength is clearly wrong or unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242.

The jury awarded Ruben $10,300.00 for past and future physical impairment. The record includes substantial evidence that Ruben suffered actual impediments unrelated to work as a result of the shoulder injury sustained in the bus accident. At trial, Ruben testified he lost strength in his left shoulder and demonstrated how high he could raise his left arm.[6] Above a certain height, Ruben stated he experiences pain and cannot lift his arm any higher. As a direct result of his

---

[6] There is no evidence in the record to show exactly how high he raised his arm for the court. The reporter's record recounts the following exchange: "Q: How high can you raise it right now?. . . A: That's it (demonstrating)."

shoulder injury, Ruben stated he is unable to do simple house chores like "[s]imply picking up heavy things or moving furniture." Further, Ruben testified his shoulder pain interrupts his sleep without the assistance of pain medication, waking him up every 2–3 hours, and that he can no longer comb his hair with his injured arm.

This evidence is clearly more than a scintilla of evidence of physical impairment such that there is legally sufficient evidence to support the jury's finding of physical impairment. *See City of Keller*, 168 S.W.3d at 810. Since the accident, Ruben has the non-work related impediments of struggling to perform simple chores, sleep undisturbed, or comb his hair using the injured arm. Further, given our deference to the jury's finding, we hold the evidence of Ruben's physical impairment is neither so weak or the jury's finding so against the great weight and preponderance of the evidence that the $10,300.00 judgment is clearly wrong or unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242.

### *4. Medical Care Expenses*

VIA's argument with regard to the sufficiency of the evidence to support the awards of medical care expenses is based on the claim the Barrazas failed to present evidence to establish the amount of medical expenses actually paid or incurred. The argument is based on section 41.0105 of the Texas Civil Practice and Remedies Code, which provides that "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." TEX. CIV. PRAC. & REM. CODE ANN. § 41.0105 (West 2008). We have interpreted this provision to mean that a plaintiff is precluded from recovering medical expenses that have been "written–off" or adjusted. *Mills v. Fletcher*, 229 S.W.3d 765, 769 (Tex. App.—San Antonio 2007, no pet.). Rather, the plaintiff may only recover the amount of medical care expenses he actually has to pay. *Id.* at 768; *see Haygood v. De Escabedo*, 356 S.W.3d 390, 398

(Tex. 2012) (holding section 41.015 limits plaintiff's recovery of medical expenses to those which have been or must be paid by or for plaintiff).

Moreover, section 41.0105 is an evidentiary provision that limits trial evidence to evidence of expenses a health care provider has a legal right to be paid. *Haygood*, 356 S.W.3d at 398. As a limitation on the admission of evidence, a trial objection based on section 41.0105 to unadjusted medical care expense evidence is required, as for all other objections to the admissibility of evidence. *See, e.g., Harrell v. Patel*, 225 S.W.3d 1, 6 (Tex. App.—El Paso 2005, pet. denied) (holding that to preserve error when evidence is improperly admitted, party must object to evidence offered); *Bushell v. Dean*, 803 S.W.2d 711 (Tex. 1991) (holding party did not preserve error when it failed to object to testimony); *see also* TEX. R. APP. P. 33.1(a) (stating that as prerequisite to presenting complaint for appellate review, record must show timely complaint to trial court).

Here, VIA failed to object to the introduction of any of the evidence of the Barrazas unadjusted past medical expenses, which were presented by exhibit during the trial. VIA points to the decision in *Garza de Escabedo v. Haygood*, where the issue of the sufficiency of the evidence to support whether medical care expenses were paid or incurred was discussed at length. 283 S.W.3d 3, 7 (Tex. App.—Tyler 2009), *aff'd sub nom.* 356 S.W.3d 390 (Tex. 2011). However, in that case the complaining party filed a motion to exclude medical bills that did not reflect the amount actually paid or incurred. *Id.* Thus, the issue was preserved for appellate review, rendering the case inapposite. Based on VIA's failure to object to the unadjusted medical expense evidence at trial, we find this portion of VIA's sufficiency challenge waived. *See Harrell*, 225 S.W.3d at 6; TEX. R. APP. P. 33.1(a).

### 5. *Future Loss of Earning Capacity*

Next, VIA challenges the legal and factual sufficiency of the evidence supporting the jury's award of $7,200.00 to Ruben Barraza for future loss of earning capacity. As this court has held in

the past, the loss of future earning capacity is the plaintiff's diminished capacity to earn a living after the trial. *Tagle*, 155 S.W.3d at 519. *The jury has considerable discretion* in determining the amount of lost future earning capacity because the amount of money the plaintiff might earn in the future is always uncertain. *Id.* (emphasis added). There must be sufficient evidence to allow the jury to reasonably measure earning capacity in monetary terms in order to support an award of damages for loss of future earning capacity. *Id.* Evidence of past earnings; the plaintiff's stamina, efficiency, and ability to work with pain; the weaknesses and degenerative changes that will naturally result from the plaintiff's injury; and the plaintiff's work-life expectancy may be introduced to support an award of damages for loss of future earning capacity. *Id.* Further, there must be evidence to show the plaintiff had the capacity to work prior to the injury and that his capacity was impaired as a result of the injury. *Id.* at 520.

At trial, Ruben testified that before his injury he earned approximately $300.00 a week in take-home pay based on the rate of $9.50 an hour. Ruben worked in "irrigation construction" for a company called "Crews Control," but had to cease working because his injuries precluded him from carrying heavy items, digging, or using a pick. All of these actions were required for proper performance of his job. Dr. Misra testified these limitations would likely continue into the future even after shoulder surgery. Specifically, Dr. Misra stated that not only would Ruben be out of work for three months after the surgery in order to recover, but he would be restricted from lifting anything over forty pounds for the rest of his life.

We hold the evidence presented regarding past income, rationale for stopping work, and future limitations after shoulder surgery, when viewed in light of this court's framework as set out in *Tagle*, satisfies the legal sufficiency standard. *See* 155 S.W.3d at 519–20. We hold there is more than a scintilla of evidence of the vital fact that Ruben has a future loss of earning capacity as a result of his injuries. *See City of Keller*, 168 S.W.3d at 810.

We also hold the evidence is factually sufficient to support the jury's award to Ruben. As previously stated, we can only set aside the verdict for factual insufficiency where, after considering and weighing all of the evidence, the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that the verdict is clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. Here, given the testimony of Ruben and Dr. Misra, we find the evidence factually sufficient to support the jury's exercise of its considerable discretion to award what is in effect six months income to Ruben as damages for future loss of earning capacity. *See Tagle*, 155 S.W.3d at 519.

Based on the foregoing analysis of VIA's challenges to the jury's damage awards, we hold the awards were proper. Accordingly, we overrule VIA's second issue in its entirety.

### C. *"Sudden Emergency" Instruction*

In its third issue, VIA complains about the trial court's refusal to submit its requested jury instruction on sudden emergency. At trial, VIA requested the trial court include in the jury charge the following "sudden emergency" instruction:

> When a person is confronted with an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use a high degree of care if, after such emergency arises, he acts as a very cautious, competent, and prudent driver would have acted under the same or similar circumstances.

*See McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43, 44 (Tex. 1978) (approving almost identically worded jury instruction for "sudden emergency"). VIA argues the trial court's refusal to submit the requested instruction was an abuse of discretion, requiring this court to reverse and remand for a new trial. We disagree.

We review the trial court's decision to refuse a particular instruction in its charge for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). A trial court abuses its

discretion when it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). "The trial court has considerable discretion to determine proper jury instructions, and 'if an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper.'" *Thota*, 366 S.W.3d at 687 (quoting *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998)); *but see Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992) (noting that language of Texas Rule of Civil Procedure 278[7] "provides a substantive, *non-discretionary* directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them." (emphasis added)). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Thota*, 366 S.W.3d at 687 (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855-56 (Tex. 2009)); *see also La.-Pac. Corp.*, 976 S.W.2d at 676. Under the harmful error rule, an "appellate court will not reverse a judgment for charge error unless that error was harmful because it 'probably caused the rendition of an improper judgment' or 'probably prevented the petitioner from properly presenting the case to the appellate courts.'" *Thota*, 366 S.W.3d at 687 (quoting TEX. R. APP. P. 61.1); *see* TEX. R. APP. P. 44.1(a).

This court has recently held that "[t]o warrant the submission of an instruction on sudden emergency, there must be evidence that: (1) an emergency situation arose suddenly and unexpectedly, (2) the emergency situation was not caused by the defendant's negligence, and (3) after the emergency situation arose, the defendant acted as a person of ordinary prudence would have acted." *Benham v. Lynch*, No. 04-09-00606-CV, 2011 WL 381665, at *6 (Tex. App.—San Antonio Feb. 2, 2011, no pet.) (mem. op.) (citing *Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex.

---

[7] "The court *shall* submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and evidence." TEX. R. CIV. P. 278 (emphasis added).

1995)). We further held that "[t]he evidence, even if conflicting, need only raise a fact issue regarding each of the elements of sudden emergency." *Benham*, 2011 WL 381665 at \*6 (citing *Jordan v. Sava, Inc.*, 222 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("If there is conflicting evidence regarding whether there was a sudden emergency, the trial court should submit the requested instruction.")).

The second element of the *Benham* test requires evidence that the "emergency situation was not caused by the defendant's negligence." *Benham*, 2011 WL 381665, at \*6. The Barrazas point to the following testimony from Paredes as conclusive evidence that the emergency situation was caused, in large part, by Paredes's negligence:

> Q: An assumption you made was that, hey, this car will be completely in the driveway by the time my bus gets there.
>
> A: Correct.
>
> Q: And because you made that assumption, you failed to keep that hundred foot distance from the car, right?
>
> A: Yes
>
> . . .
>
> Q: So you'll agree with me that a reasonable bus operator wouldn't have assumed that the car would have been gone by the time the bus would have got there, right?
>
> A: Yes.
>
> Q: And that's what caused you to have to, one, hit your brakes harder than normal, correct?
>
> A: To apply them harder, yes.

Later, the following exchange between Paredes and counsel for Barrazas occurred:

> Q: Now, if you had been doing what your operator's manual – if you had been following the operator's manual, you should have been how far from that car when you first saw that truck?
>
> A: A hundred.

Q: A hundred. So you were half that far away, correct?

A: Correct.

Q: And when you saw the danger, you were only 10 feet away, correct?

A: Correct.

Q: Okay.  And you're going 25 miles an hour, right?

A: Correct.

Q: Okay. You agree with me, sir – and you have to admit that you are responsible for causing this collision at least in part?

A: 50/50.

Q: I'm asking you. Do you accept responsibility for causing this collision?

A: No.

Q: Not at all?

A: 50 percent, yes.

Q: You think you're 50 percent at fault?

A: Yes.

Q: And why do you think you're 50 percent at fault?  What did you do wrong?

A: I followed too close.

Q: Okay.  And following too close is something a reasonable bus driver would not do?

A: True.

Q: Okay. And would you agree with me that if you had been following this safe distance this collision would not have ever occurred?

A: True.  Yes.

Q: Even assuming the truck stopped, may have just stopped right in front of the street, if you'd been a hundred feet away you wouldn't have hit him, right?

A: Yes.

Q:  And you wouldn't have had to hit your brakes so hard that people fell down on the bus?

A: Right.

Q: Okay. And so we're clear, you're not trying to place any blame on the truck for having his blinker on or off?

A: No.

Although VIA counters with the rule that "[a] party is not necessarily bound to a fact which he admits only by way of opinion," which includes estimates of speed and distance, we hold only portions of Paredes' testimony could be considered such an opinion. *See De Winnie v. Allen*, 277 S.W.2d 95, 99 (Tex. 1955). VIA next directs the court to the following language from *Benham*:

> The sudden emergency doctrine is applicable in cases involving rear-end collisions when the defendant's negligent actions are a *result* of emergency conditions, but not when the defendant's actions *prior* to the emergency are negligent . . . In short, the evidence must be such that the jury could find that the collision was not proximately caused by the defendant's own pre-emergency negligence.

*Benham*, 2011 WL 381665, at *7, (quoting *Jordan*, 222 S.W.3d at 849-50). VIA emphasizes the "jury *could* find" language from *Benham* in an attempt to counter Paredes's testimony. However, unlike the situation in *Benham*, where there was a legitimate question of fact regarding whether the brake failure was the result of the defendant's faulty repairs, Paredes unequivocally admitted fault, stating he followed Cuevas too closely and made assumptions a reasonable bus operator would not. Accordingly, we hold the trial court did not abuse its discretion in refusing VIA's request for a sudden emergency instruction. *Thota*, 366 S.W.3d at 687. We therefore overrule VIA's third issue.

Given that VIA failed to meet the second element of the *Benham* test, we need not discuss the other elements required to obtain a sudden emergency instruction. VIA's failure to meet the burden on this one element obviates the need for any analysis of the other two elements. *See Benham*, 2011 WL 381665 at *6.

### *D. Exclusion of Evidence*

VIA next challenges the trial court's exclusion of "courtesy cards" completed by bus passengers after the accident. These cards were used by passengers to record their witness statements, and, according to Paredes, were completed by the passengers within three to five minutes of the accident. The cards were excluded from evidence based on a hearsay objection by the Barrazas. VIA argues the trial court abused its discretion in excluding the cards from evidence because the cards were properly admissible under the present sense impression exception to the hearsay rule.

"The admission and exclusion of evidence is committed to the trial court's sound discretion." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *see In re E.A.G.*, 373 S.W.3d 129, 147 (Tex. App.—San Antonio 2012, pet. denied). A trial court abuses its discretion in an evidentiary ruling when it acts without reference to any guiding rules or principles. *Carpenter*, 98 S.W.3d at 687. "We will uphold the trial court's ruling on the exclusion of evidence if there is any legitimate basis for the ruling." *Dodeka, L.L.C. v. Campos*, 377 S.W.3d 726, 731 (Tex. App.—San Antonio 2012, no pet.) (citing *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)).

Hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," TEX. R. EVID. 801(d), is not admissible except as provided by the Rules of Evidence or some other statute. TEX. R. EVID. 802. One exception to the hearsay rule is a declarant's present sense impression. TEX. R. EVID. 803(1). A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *Id.*. Present sense impressions possess the following safeguards which make them likely to be true and thus admissible: (1) the report at the moment of the thing then

heard, seen, etc. is safe from any error from defect of memory of the declarant; (2) there is little or no time for calculated misstatement; and (3) the statement will usually be made to another – the witness who reports it – who would have equal opportunity to observe and check a misstatement. *First Sw. Lloyds Ins. Co. v. MacDowell*, 769 S.W.2d 954, 958–59 (Tex. App.—Texarkana 1989, writ denied) (citing *Houston Oxygen Co. v. Davis*, 161 S.W.2d 474, 476–77 (Tex. 1942)).

Although VIA contends the immediacy of present sense impression statements automatically renders them trustworthy, *see Fisher v. State*, 252 S.W.3d 375, 380 (Tex. Crim. App. 2008) ("the rationale for the exception is that the contemporaneity of the statement with the event that it describes eliminates all danger of faulty memory and virtually all danger of insincerity."),[8] we review the trial court's exclusion of the evidence under the factors set out in *Davis*. 161 S.W.2d at 476–77.

The primary argument for the exclusion of the courtesy cards at trial was that they contained the following statement:

> I am required to report the details of any unusual incident which occurs. Your comments will enable the management to treat my driving record fairly. I will greatly appreciate this courtesy.

The record reflects the trial court excluded the evidence because it determined the statement on the card was too suggestive, prompting the passengers to provide a favorable account of the incident to protect the driver from adverse employment consequences. Essentially, the trial court was concerned the statement on the cards prompted the witnesses to make calculated misstatements about the incident.

---

[8] The parties argue about the admissibility of the courtesy cards as a present sense impression relying almost exclusively on criminal cases as authority. The leading criminal case on the subject, *Fischer v. State*, is relied upon by both parties.

When viewed in light of the *Davis* factors, we hold the trial court's decision was not an abuse of discretion, but comported with guiding rules and principles of law. Although the testimony suggests there was little time between the accident and the recording of the statements, the statement written on the cards injected the possibility of calculated misstatements into the equation such that the trustworthiness of the witness accounts is called into doubt. *See Davis*, 161 S.W.2d at 476–77. Further, the witness statements were given to an interested party who would not have the same motive to impartially correct a misstatement by the witness to bolster trustworthiness as anticipated by the court in *Davis*. *See id.*

Accordingly, we hold the trial court did not abuse its discretion in excluding the courtesy cards. The trial court had a legitimate basis for excluding the courtesy cards as hearsay, despite the argument that the present sense impression exception applied. *See Carpenter*, 98 S.W.3d 682; *Dodeka, L.L.C.*, 377 S.W.3d at 731. We therefore overrule VIA's fourth issue.

### E. Improper Jury Arguments

In its final issue on appeal, VIA argues that at two different points during closing argument counsel for the Barrazas made incurable, improper jury arguments. VIA first raised this issue in its motion for new trial. "Error as to improper jury argument must ordinarily be preserved by a timely objection which is overruled." *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008). However, in certain instances where "the argument is incurable[,] . . . complaint about the argument may be made even though objection was not timely made." *Penalver*, 256 S.W.3d at 680 (citing TEX. R. CIV. P. 324(b)(5)).

Instances of incurably harmful jury argument are rare. *Id.* at 681; *Bus. Staffing, Inc. v. Viesca*, 394 S.W.3d 733, 749 (Tex. App.—San Antonio 2012, no pet.). An argument is incurable if the complaining party can show the argument by its degree, nature, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects.

*Penalver*, 256 S.W.3d at 680–681.  In considering whether this burden is met, we must determine whether the complaining party has shown the argument, considered in its proper context, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.  *Id.* at 681.

The first jury argument VIA complains of is a suggestion by counsel for the Barrazas that Cuevas had no incentive to lie about his recollection of events.  VIA argues Cuevas indeed had an incentive to lie about the events because he was a party-defendant to the suit at the time he gave his deposition testimony, but the jury could not have known this because Cuevas had settled before the time of trial.  The alleged improper argument is italicized in the context in which it was made below:

> What does he say about stopping? We asked him, so if I understand you correctly prior to being struck by the bus, your vehicle had never stopped while making this turn. He says, no, I did not. Because I was halfway through my turn going into the entrance when the bus came and hit me from behind. *I didn't see any evidence whatsoever to indicate that Mr. Cuevas would have any reason to lie about that.* He was hit.

VIA's sole cited authority for arguing the above statement is incurably harmful is Texas Rules of Evidence 408, which excludes evidence of settlement on matters of liability.  *See* TEX. R. EVID. 408.  However, Rule 408 "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice or interest of a witness or a party," which is exactly what VIA would seek to do by mentioning Cuevas was originally a party to the suit, but settled before trial.  *See* TEX. R. EVID. 408; s*ee also Mi-Jack Prods. Inc. v. Braneff*, 827 S.W.2d 493, 499 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (holding that language of Rule 408 allowed admission of "Mary Carter" agreements to show interest of former co-defendants).

Further, VIA offers no direct argument as to how the statement above probably resulted in an improper verdict.

After viewing this portion of the argument in context, we hold it was not improper argument, much less incurably harmful argument. *See Penalver*, 256 S.W.3d at 680–81. We therefore hold this portion of VIA's complaint about the closing argument is without merit.

The second portion of the closing argument VIA complains of is a suggestion by counsel for the Barrazas that an incident report completed by Paredes for VIA lacks credibility, given other statements made by Paredes. The alleged improper argument is italicized in the context in which it was made below:

> He gives two different stories. This is where I'm talking about sudden stop. The first story he gives to the police officer is there was no blinker on. Then six hours after he gets off of work. . . [a]nd after talking to the supervisor, he says he fills out . . . VIA's incident report and that's the first time he says anything about a sudden stop. Think about it, ladies and gentlemen. *Why does VIA even have an incident report? It's so that they can give it to you. It was written for you, written so that you have a reason to let him off of his responsibility. That's the only reason.* If there had been a sudden stop and emergency, he should have told the police officer and would have told the police officer. It wasn't until after he got back to the VIA office and spoke to the foremen about it. Think about that.

VIA's primary argument is that this jury argument constituted an incurable personal attack on Paredes and VIA by accusing them of manufacturing an accident report for purposes of potential litigation. The Barrazas counter that counsel's argument was merely a summary of Paredes' testimony. "Counsel may properly discuss the reasonableness or unreasonableness of the evidence and its probative effect or lack of probative effect; but such latitude extends only to the facts and issues raised by the evidence admitted under the ruling of the Court." *Tex. Sand Co. v. Shield*, 381 S.W.2d 48, 58 (Tex. 1964). Additionally, reasonable deductions and inferences may be argued from evidence properly before the jury. *Zurita v. Lombana*, 322 S.W.3d 463, 482–83 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Clark v. Bres*, 217 S.W.3d 501, 510 (Tex.

App.—Houston [14th Dist.] 2006, pet. denied); *see also Houseman v. Decuir*, 283 S.W.2d 732, 736 (Tex. 1955) (Griffin, J., dissenting) ("The right of counsel to draw inferences and deductions from the facts introduced in evidence is a most valuable one, and one which is a help to the jurors in answering the issues submitted to them.").

We hold the argument about which VIA complains constituted reasonable deductions and inferences from the evidence that was before the jury. *See Zurita*, 322 S.W.3d at 482–83. The chain of events described by counsel are bolstered by an admitted police accident report, testimony by Paredes regarding filling out the VIA accident report after his shift, and the contents of the internal incident report filed with VIA. This evidence established a context for counsel to deduce that Paredes gave a more favorable description of the accident at a later time to VIA. Given this context, we hold that arguing the VIA report was prepared in anticipation of litigation to set a favorable story for the jury is a reasonable deduction from the evidence and not an improper argument. *See id.* Therefore, we hold the contested closing argument was not improper, and *per force*, not incurable. Accordingly, we overrule VIA's fifth issue.

## CONCLUSION

Based on the foregoing, we overrule VIA's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice